# Satterfield, Ex'r. *v.* John, *pro. ami.*

*Bill for Settlement of Guardianship and Administration.*

1. *Chancery; when will not interfere by injunction.*—A court of equity will not interfere, pending the litigation, by injunction, appointment of a receiver or order to pay funds into court, to prevent the trustee, in the exercise of his legal right, from collecting trust funds, upon bill showing merely the unauthorized use of the trust property, the derivation of profits by him from such use, and the election of the *cestuis qui trust* to take such profits.

2. *Same; when will interfere.*—Peril to the trust fund alone moves the court to displace the trustee from the exercise of his legal rights over the trust funds, pending litigation against him, and unless such peril is shown by specific allegations, supported by clear proof, the court ought not to interfere.

3. *Release by ward; effect of.*—A valid release from the ward, absolving the guardian from all liability to account for his guardianship, and her acceptance of the consideration of the release in satisfaction of her demands against him, bars her of all right to call him to account for the profits derived from the unauthorized use of her estate.

4. *Injunction; when should be dissolved.*—When the answer positively denies the averments of the bill, the general rule is that a temporary injunction must be dissolved—the exception being where irreparable mischief will follow, or the intervention of special circumstances which will take the case out of the rule.

APPEAL from Dallas Chancery Court.
HEARD before Hon. CHARLES TURNER.

[Satterfield v. John.]

The opinion states the facts.

MORGAN, LAPSLEY & NELSON, for appellants.

The averments of the bill being positively denied, the injunction should have been dissolved. The bill does not show a specific claim to the draft in the hands of Harlan and the answer denies all right of the complainant to it. The draft is legally in possession of Harlan who is a party defendant, but who has not appeared, and the court has no power to reach him or the draft. The order appointing a receiver was made after the refusal to dissolve the injunction, and was unnecessary to preserve the fund, and after the appointment of Satterfield as executor of the estate of Grey, and without any averment charging him with incompetency, insolvency or want of integrity. The court had no power to vest the title in its register. *Booth* v. *Clark*, 17 Howard, U. S. 322. The injunction was mischeivous and should have been dissolved.

FELLOWS & JOHN, and PETTUS & DAWSON, *contra.* Though the court did not have jurisdiction of the property it did of the person of the executor, and having that could compel him to assign or transfer the property so as to vest the legal title in the transferee or assignee. Kerr on Receivers, 184 and note; 2 Spence's Eq. Juris. 647; Edwards on Receivers, 647.

The property consisted of a gross sum and could at once by an order be paid into court. Edwards on Receivers, 12; *Ex parte* Walker 25 Ala. 104.

The matter in dispute being the fact whether or no the property is a *part of the assets* of the estate of Grey, the appointment of a receiver was proper.

To compel a conveyance by a defendant to a receiver by an interlocutory decree is a common practice in courts of equity. Kerr on Receivers, 98–101, and such conveyance would be valid wherever the funds were situate. Kerr on Receivers, 124; *Keys* v. *Keys*, 1 Bevan 425; *Keys* v. *Lindsey*, 15 Vesey 91.

BRICKELL, C. J.—The bill is filed to compel an account of the guardianship of the appellee, while an infant, and of the administration of the estate of her deceased mother, of which she was sole legatee and devisee. It presents a case lying within the original jurisdiction of a court of equity, which is not impaired by any statute. An injunction is sought to restrain the guardian, from collecting and re-

[Satterfield v. John.]

ceiving the proceeds of the sales of cotton, averred to be the property of the ward, which had been illegally seized by the military authorities, and the proceeds of the sales of which had been paid into the United States treasury, but which the secretary of the treasury had directed to be refunded. The order of the secretary directed the proceeds of the sale of the cotton to be refunded to the guardian, and drafts on the treasury payable to him had been delivered to his attorney.

The appellee claims the cotton, as having been grown on her lands, by the labor of her slaves employed in its cultivation. It is not shown by the bill that under the statute, the guardian had obtained an order authorizing him to keep her estate together. Such order was necessary, or he was liable for rents and hire, or the profits derived by use of the ward's estate, at her election. The election to take the profits can be made and asserted only in a court of equity, and to them the ward has no title, legal or equitable—when ascertained they constitute a mere debt. Her right results from the doctrine of trusts, and is founded on the rule, that a trustee shall not be permitted to make a profit for himself, by the uses to which he may appropriate the trust estate. *Bryant* v. *Craig*, 12 Ala. 354. If it is conceded the bill states a case of the unauthorized use of the trust property— the derivation of profits by the trustee from such use, and an election by the *cestui que trust* to take such profits, in lieu of charging him with interest, or rents and hires, it does not present a case, in which a court of equity should by injunction restrain the trustee from receiving and holding the profits; nor a case in which he should be ordered to pay them into court; or, a receiver should be intervened to hold them pending the litigation. A court of equity will compel a trustee to the performance of his duty, and will enjoin him from taking the custody of trust funds, when he has been guilty of such misconduct, as create a reasonable apprehension of their safety, if they pass under his control; or, if he is insolvent, and there is a just probability of his wasting or misapplying them. High. on Inj. § § 827 and 831; Kerr on Inj. 161; Perry on Trust. § 816. It is the peril of the funds—the just and probable cause to apprehend waste or loss, that induces the interference of the court, and the displacement of the legal right of the trustee, to collect and hold them. *Schanck* v. *Schanck*, 3 Hals. Ch. 140. When it is not apparent that there has been gross mismanagement by a trustee, or that there is jeopardy in suffering the assets to pass under his control, because of his insolvency, existing or

impending, it would be a harsh measure, to restrain him by injunction, from the exercise of his legal rights.

The bill is wanting in any positive averment of the insolvency of the guardian, as an existing fact, or of facts on which a just apprehension could be founded, that it is impending. Its only allegations touching this point, are not made the ground on which an injunction is sought to prevent him from the collection and reception of the proceeds of the sales of the cotton, but as the facts influencing the appellee to accept from him a conveyance of lands, and to execute to him a release from all liability to her on account of the guardianship and administration. These allegations are as follows: "And finding that said Grey was rapidly disposing of his property, and that he would soon strip himself of all his property in Alabama, and elsewhere;" and again, "Oratrix avers that Grey had already disposed of much of his property, and she was apprehensive that he would dispose of the balance, and put the same beyond her reach," &c. These allegations are vague and indeterminate, and so far from asserting insolvency, as an existing fact, they imply present solvency, but intimate a conversion of visible property, or its transfer, so that the appelle would have been embarrassed in enforcing her just demands. Apprehensive of this embarassment, she entered into the settlement, and executed the release which she prays may be vacated. The allegations are not of facts, but rather of the appellee's fears and apprehensions. What was the character of the property, of which disposition was made—on what consideration it was disposed of—what was its relative value, to the property of which disposition had not been made, does not appear. It may be, that the dispositions were in the ordinary, usual course of business, not justifying any reasonable apprehension of insolvency, or embarassment in the enforcement of a just demand, and that appellee's fears were needlessly excited. It requires clearer and stronger allegations than these, to justify the wresting of trust funds from the custody of a trustee. Besides, the allegations are positively denied in the answer, and the solvency of the guardian distinctly affirmed. Reading the bill and answer in connection, no reasonable apprehension can be indulged, that the funds would be imperilled, if they passed into the custody of the guardian.

The bill in one of its paragraphs, avers the cotton was the absolute property of the appellee. In another, it is averred that the appellee had been informed the application to the treasury department for the proceeds of sale, was made in the name of the appellee and her mother, and that she was

[Satterfield v. John.]

surprised to learn it was in the name of the guardian, and that he was claiming the cotton as his property. Although, in the seventh paragraph, the allegation is positive that the cotton was the product of her lands, and the labor of her slaves ; in the tenth paragraph, she avers her inability to state whether any of her mother's slaves assisted in its production. The averments of the answer in response to these allegations, are distinct, showing that if appellee elects to take the proceeds of the sale of the cotton in lieu of rents and hires, it but a share, not the whole which she can take, and affirms the appellee's knowledge that the application to the treasury department, was made in the name of the guardian, and that he asserted ownership of the cotton.

From the bill it appears the appellee had released the guardian from all liability to account for his guardianship, and had accepted a conveyance of lands in satisfaction of her demands against him. If that release is valid, and on that question we express no opinion, it is certain it embraces any claim, the appellee could prefer to this cotton.

The liability of the guardian was to account for rents and hires, if the lands were rented and the slaves hired. If not rented and hired, but occupied and employed by the guardian for his own benefit, the profits derived from the occupation and employment, or the reasonable value of the use and occupation and hires, at the election of the ward. The cotton when subjected to deductions for the expenses incurred in its production, is the representative of the profits—the thing from which they are to be derived. Releasing the guardian from liability to account, is a release not only of his liability to account for rents and hires, but of his liability for the profits which might be taken in lieu of them.

Under the facts averred in the answer the release is valid, and the appellee can have no possible claim to the cotton, or the proceeds of its sale. It was executed after the marriage of the appellee—three years after her arrival at maturity, on the solicitation of her husband, and without any fraud on the part of the guardian. It originated with her husband, and no influence was exercised by the guardian in its execution, who was reluctant to enter into the transaction of which it is a part. His desire for peace, and his affection for the appellee, who had grown up under his care, and whom he was anxious to benefit, induced him into the transaction to convey the lands, the husband was willing to accept in satisfaction of all demand against him, in consideration of a full release, and not any purpose to avoid a fair and full accounting to the appellee. This is the light in which the release is

[Pylant v. Reeves.]

placed by the answer. It stands in a different light, under the allegations of the bill. The testimony on the hearing alone can determine its validity. The answer is responsive in its statements, and leaves the appellee without any claim whatever to the funds from collecting which the guardian had been enjoined. The injunction should not stand in such a case. The whole merits of the bill are completely repelled by the answer, and not a circumstance remains which can justify interference with the legal rights of the guardian. The general rule is, that when an answer positively denies the merits of the bill, a dissolution of the temporary injunction follows. The rule is not inflexible, but it must be apparent irreparable mischief will follow, or some circumstance peculiar in its character must exist, to justify a departure from it. So it is the invariable rule, that if the allegations of the bill are not sufficient to warrant the interference by injunction, the injunction must be dissolved, though the bill may be retained for other relief. *Harrison* v. *McCrary*, 37 Ala. 688.

If the proceeds of the sale of the cotton, were strictly trust funds, to which the appellee had a clear equity, it cannot be affirmed on the allegations of the bill, there was any just reason to apprehend loss, waste, or misapplication, if they passed into the custody of the guardian, and on this ground the injunction should have been dissolved.

The allegations of the answer are responsive and full, disclosing that the appellee has no just claim to the funds—that whatever claim she could have preferred was fairly released to the guardian. On this ground also, the injunction should have been dissolved.

The decree of the chancellor is in all things reversed and annulled, and a decree will be here rendered dissolving the injunction heretofore granted in this cause. The next friend of the appellee must pay the costs of this appeal in this court, and the court of chancery.