Montana Cent. R'y Co., respondent, *v.* Helena & R. M. R. Co., appellant. /

Railroad Companies — *Right of way of another company located through a canyon — Injunction — Revised Statutes Montana, division 5, article 3, chapter 15, section 309.*— Where one railroad company, duly authorized, has built its road-bed, and obtained its right of way and grounds for station-buildings, machine-shops, side tracks, etc., through a defile or canyon, the court will grant an injunction in its favor, restraining another railroad corporation, authorized to build to the same point, from going upon or interfering with the track or right of way of the corporation first in possession until an adjustment of rights can be made by the court under the general railroad law. R. S. Mont. p. 464, div. 5, art. 3, ch. 15, § 309.

Same — *Right to take right of way of another railroad — Necessity.*— One railroad corporation is not empowered, under the general railroad act (R. S. Mont. div. 5, art. 3, ch. 15), to be the judge of the necessity of the taking or using the road-bed or right of way, built or secured by another railroad company through a canyon or defile, but the necessity is a question for decision in the district court of the county in which the canyon is located.

*Appeal from Third District, Lewis and Clarke County.*

Sanders, Cullen & Sanders, for the appellant.

Chumasero & McCutcheon, E. W. & J. K. Toole, and Wm. Wallace, Jr., for the respondent.

Galbraith, J. This is an appeal from an order of injunction made by the judge at chambers. The order, in substance, prohibited the appellant from entering upon, or in any manner interfering with, the free and unobstructed use and enjoyment, by the respondent, of the tracts of land, right of way, or station-grounds described in its complaint, and from using or occupying the same for the construction of its road-bed, and from committing any waste or nuisances thereon, until the further order of the court. This order was made upon the complaint and answer, and affidavits presented in support of the answer. The facts, as shown by these, were substantially as follows: That both

the respondent and appellant are organized under the general act of the general assembly of the territory of Montana in relation to railroad corporations,— the former being authorized to construct "a branch extending from a point at or near Helena, in a southwesterly direction, along Ten-Mile creek, so called, to Red mountain, at or near Rimini;" the latter, with authority to construct "a railroad from said city of Helena to and near said town of Rimini;" that the respondent had taken the necessary steps "whereby it became and is entitled to one hundred feet on each side of the central line of its said railroad where the same is located and constructed through and over the public domain, and fifty feet on each side of said line where it is located and constructed on other property, as its right of way;" that, in connection with such right of way, it had procured, and was entitled to the possession, use and enjoyment of, certain ground adjacent thereto, for station buildings, depots, machine-shops, side tracks, turnouts and water stations, which, with said right of way, were obtained prior to the alleged commission, by the appellant, of the acts complained of; that the appellant has entered upon, and is now constructing its road-bed at certain points upon the respondent's said right of way and depot grounds, and at one point has located a crossing of the respondent's track.

The answer avers that it is necessary so to construct appellant's road, and that both roads are constructed through canyons, passes or defiles of Ten-Mile creek; that no damage will be done to respondent's road, by the construction of the appellant's road, except by said necessary crossing; and that the respondent refuses to make any equitable terms, whereby both roads may each occupy said canyons, or portions thereof.

The principal question for our determination is as to what authority shall determine the terms and conditions upon which one railroad corporation may occupy the track, road-bed or right of way of another located through a, canyon, pass or defile. It is contended by the appellant

that this power exists in the corporation so occupying another's track, road-bed or right of way, while it is claimed by the respondent that such jurisdiction belongs to the district court of the judicial district wherein the canyon, pass or defile is situate. Our conclusion as to this question must be deduced from a correct construction of our statutes in relation to the subject of eminent domain.

The decision of this court has already been made, sustaining the action of the judge in making the above preliminary order of injunction, but, no opinion having been then rendered, our purpose now is to present our reasons for such determination. The legislation of this territory, in relation to the right, power and method of taking property for the use of railroads, is wholly comprised in title XV on the subject of eminent domain. R. S. div. 1, p. 147, and article 3, ch. 15, div. 5, R. S. p. 464, entitled "Railroad Corporations," commonly known as the "General Railroad Law." The former of these expressly refers to the taking of property for the uses of railroads, and confers the power of exercising the right of eminent domain, for this as well as all other public uses therein named, upon the district court. Section 585 of this title provides as follows: "All proceedings under this title must be brought in the district court for the county in which the property is situated. They must be commenced by filing a complaint, and issuing a summons thereon. Section 586 designates, among other things which the complaint must contain, the following: ". . . *Third,* a statement of the right of the plaintiff." This evidently refers to section 583 of the same title, which provides that, "before property can be taken, it must appear (1) that the use to which it is to be applied is a use authorized by law; (2) that the taking is necessary to such use; (3) if already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use."

Therefore, unless taken away by conflicting legislation, either directly or by implication, the district court of the

county where the property is situate has original jurisdiction in proceedings for the condemnation of property for the use of railroads, or for the other purposes mentioned in the foregoing act. In so far, however, as this jurisdiction is concerned, the general railroad law conflicts. Section 302 of this law provides that railroad corporations " shall be authorized to locate, construct, maintain and operate their roads between any points they may select, within the counties named in the certificate as *termini* of such road." By section 306 the right of way is granted through the public lands to the extent of one hundred feet in width on each side of the center of the railroad, except as against the United States. Section 307 provides " that, for the purpose of securing private lands and premises along the line of its road, necessary and proper for the construction thereof, such corporation be, and is hereby, empowered to enter upon, purchase, take and hold any lands and premises that may be necessary for the construction and workings of said road, not exceeding in width one hundred feet on each side of its center line." This section also provides the method by which such property may be appropriated. Section 308 provides how, in case of necessity, any road, street, alley or public way or ground of any kind, or any part thereof, owned or in charge of municipal corporations, public officers, or public authorities (evidently referring to streets and public grounds in towns and cities, and to highways), may be occupied and appropriated by such companies, and expressly makes their directors the judges of the necessity for such appropriation. The above sections, 302 and 307 by implication, and section 308 directly, make the railroad corporations judges of the necessity for the appropriation; that is, they are, by implication, constituted the judges of the necessity for the appropriation of private lands, and directly of the necessity for the appropriation of streets, alleys, public grounds and highways, when there is an inability to agree with the " corporation or public officer, or public authorities owning or having charge thereof."

But, except as to these instances, the jurisdiction of the district court relating to the condemnation of property for the use of railroads being principally, if not alone, that of one railroad corporation seeking to appropriate the right of way and other property occupied by and already appropriated by another, remains as provided for by title XV on the subject of eminent domain, unless taken away by section 309 of the general railroad law in the case for which it specially provides, viz., a railroad's track or right of way in a canyon, pass or defile. This section is as follows: "That any such corporation whose right of way, or whose track upon such right of way, extends through any canyon, pass or defile shall not exclude any other such corporation from a passage through the same, upon equitable terms; and, in case of disagreement, upon application of either of the parties, with notice to the other, the same shall be adjusted by a court of competent jurisdiction; and if the passage of any such railroad through any canyon, pass or defile causes the disuse or change of location of any public wagon-road that may traverse the same, damages shall be awarded therefor as provided by section 307 of this article; and, if it shall become necessary for any other railroad company passing through the territory to cross or pass any other railroad track or defile already constructed or surveyed, the same may be so done without compensation therefor, except the actual damage done by so doing; and when two or more companies desire to pass through the same canyon, pass or defile, neither shall exclude the other from passing through the same, and neither shall have any compensation therefor, except the actual damage done by so doing; and should it be necessary that the said companies should use the same track or bed in passing through such canyon, pass or defile, the same may be done without any compensation therefor from one to the other, except the actual damage done by so doing."

This section provides for four kinds of cases; but the matter under consideration is referable to the first of these, viz.,

where one road has established its right of way or con-
structed its track upon such right of way, through a
canyon, pass or defile, and another road attempts to pass
through upon such right of way. It is a case where a rail-
road attempts to take for its own use property already
appropriated for another public use. By the law of emi-
nent domain (title XV, *supra*), in order to do this, it would
be necessary to make it appear to the court that it was for
a more necessary public use. To what extent does the
above provision of the general railroad law change this
method of proceeding provided by title XV? If so, how
are they to be reconciled, and what construction is to be
placed upon them? It will be observed that, with the ex-
ception of a public wagon-road passing through a canyon,
pass or defile, the method of proceeding to condemn which
is changed from that provided by section 308 to that by
section 307, being the same as in the case of private lands,
this section relates to a different kind of property than that
named in any other portion of the article, viz., property al-
ready appropriated by a railroad. But while it provides
for a method to appropriate a public wagon-road, the only
tribunal mentioned in connection with railroad property is
"a court of competent jurisdiction," proceeding in the
usual manner in a "case of disagreement, upon application
of either of the parties with notice to the other;" and an
adjustment upon equitable terms. Would not the making
by the law, as we have seen, of the railroad the judge of
the necessity of the taking of the other property mentioned
therein, and the mention in the same section of the method
of proceeding to condemn a public wagon-road, and the
failure to make the railroad occupying another's property
the judge of the necessity for so doing, and the express
mention of the court of competent jurisdiction proceeding
regularly to adjust a dispute, plainly indicate that it was
the intention of the legislature to constitute the district
court of the county wherein the canyon, pass or defile is
situate the tribunal to determine the terms and conditions

upon which one railroad shall occupy the property of another therein?  This would seem to be the plain import, looking only to the language of this section, which contains all that this article provides relating to the property of a railroad in a canyon, pass or defile.  Why this silence in relation to the railroad being the judge of the necessity in such a case, unless it was intended or deemed to have been provided for by this section relegating the whole matter, where there was a disagreement as to the terms and conditions of passage, to a court of competent jurisdiction?  Unless this is meant, we do not understand why the legislature should make such a provision.  The nature of the case requires that this should all be done before the passage by the second road through the canyon, pass or defile, and doubtless this was the intention of the legislature when it made this provision.  What could the legislature mean by providing for the adjustment of the terms of passage, if the road seeking to go upon another's right of way in a canyon could locate its track or road-bed anywhere it pleased thereon?  This would be to allow the road attempting to occupy the other's right of way to be judge of its own equitable terms; for we think that the terms in this connection do not refer to damages or compensation alone, but also to the manner of locating and constructing the road with relation to the first right of way or track.

Some of these have been well suggested by the judge in his decision: " In what places, if any, is the canyon wide enough for the second track?  Might the second track be built on the opposite side of the canyon?  Should it be built on or over the first track?  These questions, and many others, involving science, skill and engineering, would have to be solved before the court could adjudicate upon the question."

To say that a road seeking to occupy another's right of way or track should be the judge of the equitable terms of such occupancy, and of the construction of its road, would place it in the power of the former to injure, or even de-

stroy and render useless, the road of the latter, without redress. It would confer the power of confiscation without a remedy. The object of the law was doubtless to prevent a single railroad in this mountain region, where there are so few convenient or even accessible or available passages for railroads, from obtaining the control of any of these to the exclusion of other roads. It is intended to meet a case where there is not room for more than one road to establish a right of way or track through a canyon, pass or defile. These words, as used in the law, signify, as stated by the learned judge in his decision below, a way or passage between steep hills or mountains, or precipitous bluffs of earth or rock, where there is only room for one right of way, or for the construction of but one track. This provision of the statute was made to promote the general interest. It would manifestly be detrimental to the interests of the territory that a single railroad should monopolize any one canyon, pass or defile, through the otherwise almost impassable barriers of these mountains. It seems plain that the construction of the law contended for by the appellant would defeat its object. It would result in the very condition of things against which the legislature seeks to provide. By title XV, one railroad could only appropriate the property of another in all cases where it was made to appear to the court that it was for a more necessary public use. But it is plain that when property is used for one railroad it cannot, unless in exceptional instances, be said to be taken for a more necessary public use, when appropriated by another railroad. Therefore, when the legislature contemplated the appropriation of the property of a railroad in a canyon by another, being a case of necessity, it provided that the court could do so, not by requiring that it must appear to be for a more necessary use, but upon equitable terms.

If the construction contended for by the appellant is correct, the intention of the legislature to make the second railroad the judge of the terms and conditions should appear in plain and express terms, or by necessary implication. Mills,

in his work on Eminent Domain, referring to numerous authorities (page 46), says: "To take property already appropriated to another public use, the act of the legislature must show the intent so to do by clear and express terms, or by necessary implication, leaving no doubt or uncertainty respecting the intent." "A general authority to lay out a railroad does not authorize a location over land already devoted to another railroad or public use." So far as the general railroad law is concerned, no provision is made for the taking by one railroad of the property of another, except in a canyon, pass or defile. There is nothing in this law which indicates an intention to authorize one railroad to take the property of another, except a general authority to lay out a railroad. This, alone, is not sufficient. If such authority would be probable to appear anywhere, it would be in the section containing the provision under consideration; but there is nothing in this which indicates such plain and clear intention, but, on the other hand, rather an intention to confer this jurisdiction upon the district court. "One public corporation cannot take the lands or franchises of another public corporation in actual use by it, unless expressly authorized to do so by the legislature; but the lands of such a corporation not in actual use may be taken by another corporation authorized to take lands for its use *in invitum*, whenever the lands of an individual may be so taken, subject to the qualification that there is a necessity therefor." "The question as to whether such necessity exists or not is one of fact for the jury."

The legislature recognized, in the case of the passage of railroads through a canyon, pass or defile, a case of necessity, viz., that it was necessary for the public interest that they should pass through without excluding each other, and in such a case as the one at bar, that the second may use the property of the first; but provided that, before this could be done, it must be upon the just and equitable terms and conditions adjusted by the district court.

*Railway Co.* v. *Alling*, 99 U. S. 463, is a case directly in

point. In this case the supreme court of the United States, Mr. Justice Harlan delivering the opinion, after deciding that the Denver Company (i. e., the railway company) had the first right of way through the Grand canyon of the Arkansas, subject to the act of congress of 1875, relating to railroads passing through a canyon, pass or defile, and which in its main features resembles the provision of our statute under consideration, says: "Where the Grand canyon is broad enough to enable both companies to proceed without interference with each other in the construction of their respective roads, they should be allowed to do so. But in the narrow portions of the defile, where this course is impracticable, the court, by proper orders, should recognize the prior right of the Denver & Rio Grande Railway Company to construct its road. Further, if in any portion of the Grand canyon it is impracticable or impossible to lay down more than one road-bed or track, the court, while recognizing the prior right of the Denver Company to construct and operate that track for its own business, should by proper orders, and upon such terms as may be just and equitable, establish and secure the right of the Canyon City Company, conferred by the act of March 3, 1875, to use the same road-bed and track, after completion, in common with the Denver Company."

In interpreting the same act of congress, Judge Hallett, of the circuit court of the United States, in the case of *Denver & R. G. R'y Co.* v. *Denver, S. P. & P. R. Co.* 17 Fed. Rep. 867, which is also a case in point, says: "It is not said in the act of congress that the entire right of way which may be appropriated by one company is subject to be used by another, but only that the first appropriation shall not prevent any other company from the use of the same canyon, pass or defile; and it must be clear from the language used that it is only in cases of necessity that one company can go upon the right of way of another for the purpose of building its road." "Now, whenever a controversy arises between two companies in respect to the exist-

ence of such a necessity, the fact that the canyon, pass or defile is such that it is impracticable for the second company to pass through it without going upon the territory of the road first located, will enter into the controversy, and it must be settled by the courts." "It is perfectly plain that the first company has the right to object to the intrusion upon its right of way by the second company until that question is settled. If it were true that this act would subject the way to the use of any other company, in such a manner that the latter might go in against the objection of the first, it would also be true that the second company could demand of the first the use of its track absolutely, without adjudication of the facts in any court; but it seems to me as clear as anything can be, that the first company to locate its road through any such place as is described in this act of congress may, in the first instance, and without showing any cause whatever, object to admitting any other company into its way until the facts are shown making it necessary for the second company to come on the right of way to build its road. . . . Questions that arise in a controversy of this kind, or that may arise, are as difficult of determination, and as substantial in their character, as any which can be brought into a court of justice. I think they are questions which are subject to adjudication in the ordinary sense. They are questions to be settled by a final decree of court. The matter is to be settled upon evidence, and not upon a preliminary motion. . . . It would be manifestly unjust to the defendant itself to countenance the building of the road now, when it may be that the court will afterwards require the road to be removed, and built somewhere else. What would be said if we should now, and here, give the defendant permission to go on and build its road as it shall choose, and in six months from this time, on final hearing, declare all of it to be wrong,— a mistake from the first,— and that it would be the duty of the defendant to take up its track, and put it somewhere else? I do not think any court can

go on in that way.   This is a matter for final decision and determination, and, as such, these are questions which can only be considered on final hearing.  . . .   What was said by counsel about the hardships that rest upon the defendant may be entirely correct,— I suppose it is; but I think it is not a matter for which the court can give relief by preliminary order.   The plaintiff in this action has secured this right of way by going upon it, and building its road, under the act of congress, and I think it has a right to defend that right of way against all who may seek to convert it to their own use, until the conditions of things mentioned in this act of congress is shown to exist, and no court has power to direct any other *road* to go upon such way until the facts are ascertained.   They are to be ascertained according to the usual methods of proceeding in courts of equity."

These principles appear to us to be so applicable, so correct and just that it would almost seem as if the provision of our statute under consideration was drawn to conform to the above act of congress, and the foregoing interpretation of it by these decisions.   These decisions demonstrate conclusively that, under the provision of our statute for such cases, the respondent has the right of way through the canyons; that it may object to any encroachment upon its right of way or track until it appears to the court that there is a necessity therefor; that until it so appears, any encroachment by the appellant upon such track or right of way would be a trespass; and that when such necessity does appear, and there is a failure to agree upon the terms of occupancy, the matters in dispute shall be adjusted by the district court of the county where the canyon, pass or defile is situate, upon equitable terms.

It seems to us plain, for the foregoing reasons, that the former decision of this court sustaining the action of the judge at chambers in issuing the foregoing order of injunction was correct.

*Judgment affirmed.*

BACH, J., concurs.

McLeary, J. (*dissenting*). In this case, as announced at the August term, I feel constrained to dissent from the decision arrived at by a majority of the court. Not being able to agree with them in the opinion delivered, a proper respect for their views demands that I should state my reasons for dissenting therefrom. This will be done as briefly as the importance of the case and the issues involved will allow. Both the appellant and the respondent are railroad companies, chartered under the general laws of the territory of Montana. It is the purpose of each, as expressed in their charters, to build a line of railroad from the city of Helena through the pass or canyon of the Ten-Mile creek, to the town of Rimini.

The respondent was the first to occupy the ground, and had commenced surveying and mapping out its route, and had partly constructed its road-bed along the greater portion of its route, before the appellant began operations under its charter. The appellant afterwards sought to lay out and construct its road over nearly the same route, passing through the same canyon, approaching in some places to within a few feet of the road-bed of the respondent, at one place crossing its track, and at another place running through its depot grounds. Thereupon, the Central Company, on 25th July, 1886, brought suit in the district court of Lewis and Clarke county, and applied for a temporary injunction, or restraining order, to the chief justice presiding in said court, to prohibit the Red Mountain Company from constructing its road-bed upon the track, right of way or station-grounds of the plaintiff. Then in turn, on the same day, the Red Mountain Company answered, attaching to its answer affidavits opposing the issuance of the injunction or restraining order, and praying for a dismissal of the complaint, and for an order adjusting the rights of the parties in occupying portions of the canyon of Ten-Mile creek. On the 2d day of August, 1886, the restraining order was granted and issued, prohibiting the Helena & Red Mountain Railroad Company from entering upon the lands and

premises described in the complaint, and from digging, excavating ground, or constructing its road-bed, or in any manner interfering with the free and unobstructed use and enjoyment of the tract of land, right of way, or station-grounds of the Montana Central Railway Company, described in the complaint, or from using or otherwise occupying the same, or any part thereof, for the purpose of constructing the road-bed of the defendant, until the further order of the court; and from this interlocutory order, under the statute of this territory, this appeal was taken.

This case came up in the supreme court at the August term, 1886, and after full argument of counsel the decision of the lower court was affirmed by a majority of the court, but no opinion was filed or read at that term. At the January term, 1887, the opinion of the court was filed, and not being yet able to concur I propose to give my reasons for dissenting.

The rights of both parties to this litigation are well defined by the statutes of the United States and of this territory, and the remedy for any infringement of them is clearly outlined in section 309 of the Revised Statutes of Montana. Under the act of the 43d congress, chapter 152 (18 Stat. at Large, p. 482), passed the 3d of March, 1875, both of these companies have the right to construct their roads over the public lands of the United States, and are granted the right of way thereover, to the extent of one hundred feet on each side of the central line of the road. This act of congress is virtually re-enacted by the legislature of this territory, in the Revised Statutes, on page 467, section 306, of the fifth division. The territorial statutes go farther, and provide, in accordance with the act of congress, for the manner in which private lands may be condemned for the use of railroad companies.     R. S. art. 3, div. 5.

But under the circumstances of this case, according to my view of it, the statutes and general principles of law in regard to eminent domain and the condemnation of property for public use have no application, except as to the

depot grounds, and the crossing of one company's track by the other. The depot grounds, whether they were acquired by purchase or condemnation, are private property of the Central Company, and if it is necessary for the Red Mountain Company to cross them with its road-bed, it must take the statutory means to condemn them for public use. They, according to the pleadings and affidavits, do not lie within the canyon, but only at the mouth of it.

But within the canyon of the Ten-Mile creek an entirely different state of facts exists, and other sections of the statutes are provided for the regulation of the rights of railroad companies whose conflicting interests may bring them into collision with each other in the construction of their tracks through the mountains. For convenience in considering these questions, I will quote at length the statutes in regard to the rights of railroad companies passing through any canyon, pass or defile on the public lands of the United States. The law of congress reads as follows: "That any railroad company whose right of way, or whose track or road-bed upon such right of way, passes through any canyon, pass or defile, shall not prevent any other railroad company from the use and occupancy of said canyon, pass or defile for the purposes of its road, in common with the road first located, or the crossing of other railroads at grade. And the location of such right of way through any canyon, pass or defile shall not cause the disuse of any wagon or other public highway now located therein, nor prevent the location through the same of any such wagon-road or highway, where such road or highway may be necessary for the public accommodation; and where any change in the location of such wagon-road is necessary to permit the passage of such railroad through any canyon, pass or defile, said railroad company shall, before entering upon the ground occupied by such wagon-road, cause to be reconstructed at its own expense in the most favorable location and in as perfect manner as the original road; provided that such expenses shall be equitably divided between any number of

railroad companies occupying and using the same canyon, pass or defile." Sec. 2, ch. 152, Laws 43d Congress.

The statute of the territory reads as follows: "That any such corporation whose right of way, or whose track upon such right of way, extends through any canyon, pass or defile, shall not exclude any other such corporation from a passage through the same, upon equitable terms, and in case of disagreement, upon application of either of the parties, with notice to the other, the same shall be adjusted by a court of competent jurisdiction; and if the passage of any such railroad through any canyon, pass or defile causes the disuse or change of location of any public wagon-road that may traverse the same, damages shall be awarded therefor as provided by section 307 of this article; and if it shall become necessary for any other railroad company, passing through the territory, to cross or pass any other railroad track or defile, already constructed or surveyed, the same may be so done without any compensation therefor, except the actual damage done by so doing; and when two or more companies desire to pass through the same canyon, pass or defile, neither shall exclude the other from passing through the same, and neither shall have any compensation therefor, except the actual damage done by so doing; and if it should be necessary that the said companies should use the same track or bed in passing through such canyon, pass or defile, the same may be done without any compensation therefor from one to the other, except the actual damage done by so doing." R. S. sec. 309, 5th div. p. 469.

These two statutes exhibit the legislative will upon the subject, and define the rights of two or more railroads passing through any canyon, pass or defile in the territory of Montana. There is no serious conflict between them, although the statute of the territory is more full and explicit on some points. It was apparently drawn to carry out or supplement the law of congress.

Upon the proper construction of these two statutes the decision of this case should in a great measure depend.

The territorial statute has never been interpreted in any case prior to this, by the supreme court of the territory, or any other court, as far as I am advised. The court has been referred to two cases decided under the act of congress above quoted, and which may be considered as interpreting that law. The first of these is the case of *Railway Company* v. *Alling*, reported in the 99th United States Report, pages 463–82. The second is a case decided by Judge Hallett, in the circuit court for the district of Colorado, styled *Denver & Rio Grande R. R. Co.* v. *South Park & Pacific R. R. Co.* In this latter case the learned judge delivered an oral opinion, which was reported in the newspapers at the time, and may be found in the 17th Federal Reporter, pages 867–70. In the opinion of Mr. Justice Harlan, in 99 U. S., above noticed, it was decided that both companies should be allowed to proceed with the construction of their respective roads through such canyon, where it was broad enough for them to do so without interfering with each other, but where in various portions of the defile this was impracticable, the court should by proper orders secure upon just and equitable terms the rights of the second company, under the acts of congress, to use, in common with the first company, the same road-bed and track after the same should have been completed. There is nothing said in that opinion about the superior and exclusive rights of either company to what is improperly denominated "right of way;" that term being often used to designate a strip of land, two hundred feet wide, lying on each side of the track, as well as to mean the legal right of the railroad company to use the same. If Judge Hallett is correctly reported, he goes beyond the decision of the supreme court of the United States, and extends the rights of the companies, as laid down in this opinion, to the right of way itself, drawing no distinction between "road-bed" and "track," and the strip of land two hundred feet wide, which was claimed by the first company taking possession. I cannot regard an oral opinion, delivered in the hurry of

the trial of the cause, and reported in the newspapers (perhaps incorrectly), as binding upon this court, especially when rendered by a court which is not one of last resort. And whatever weight may be given to the opinion of Judge Hallett, should only be so given on account of the learning of the judge, the correctness of the argument and the authorities cited by him to sustain the positions taken. Then, it seems to me, this case should be decided upon the laws of congress, as interpreted by the supreme court of the United States, and the statute of this territory, as it is written in the Revised Statutes for our observance.

There is evidently a broad distinction between the rights of railroad companies to a right of way over the public lands of the United States, in the territory generally, and their rights when running through a canyon, pass or defile. In the case at bar, both railroad companies have located their roads through the canyon, nearly the entire distance from Helena to Rimini. A canyon, as described by Webster, is "a deep gorge, ravine or gulch between high, steep banks, worn by water-courses." Nothing is said in the statute about the width of the canyon to which the law is intended to apply, but it may be fairly and correctly presumed that it was intended to regulate the rights of railroad companies, only in such canyons as are too narrow at the bottom to admit of two rights of way, of width allowed over other lines. Hence we may conclude, wherever a gorge or canyon is less than two hundred feet wide, the statute quoted herein would apparently apply. Such I believe to be the case of the canyon of Ten-Mile creek, referred to in the pleadings herein.

In the opinion of the majority of the court heretofore delivered, it has been said that the principal question for determination is, "What authority shall determine the terms and conditions upon which one railroad corporation may occupy the track or road-bed or right of way of any other, located through a canyon, pass or defile." Such does not seem to me to be a correct statement of the case.

The right is clearly given by the act of congress to any railroad company to pass through a canyon, pass or defile without regard to the width of the same; and the right of way, if it be so called, through such a canyon is deemed by the statute to be the common property of any two railroad companies whose routes lie through the same. And it is provided in the statute of the territory, that, when two or more companies desire to pass through the same canyon, neither shall exclude the other from passing through the same; and neither shall have any compensation therefor, except damage done by so doing. And further, that any corporation whose right of way, or whose track upon such right of way, extends through any canyon, pass or defile, shall not exclude any other corporation from a passage through the same, upon equitable terms. It seems to be presumed by the legislative power that "the equitable terms" mentioned in the law would readily suggest themselves to either corporation, but it is provided, if they cannot agree upon the terms, that either of them may refer the matter (upon due notice to the other) to a court of competent jurisdiction. Nothing is said in the statute about preventing any company from using a canyon until the equitable terms are settled; and it seems to me that nothing could be properly inferred from the statute, authorizing such a course to be pursued. The first company locating its route through the canyon acquires no greater right than any other company which may afterwards desire to do so. Of course, if the second company should undertake to construct its road in such a way as to injure the property of the first company, or to destroy the road-bed which it had already constructed, a court of equity would interfere by an injunction to prevent it. But the second company cannot be regarded in any light as a trespasser upon the lands of the first, for the statutes make them, as to these canyons, tenants in common, as far as the right of way is concerned. The only exclusive right acquired by the first company to take possession by occupying the ground is the choice of

location for its track and the use of its ground covered by the road-bed itself, with the necessary embankments, retaining walls, etc. As many other companies can use the same canyon as can place their tracks therein in the usual manner of constructing railroads, so as not to cause their trains to collide with those of other companies as they may run through the canyon.

It has been well said that " the right of passage being a common right granted to all railroads, it necessarily follows that no greater burdens, by way of expense, or otherwise, could be imposed on the second company than is borne by the first company, in constructing its road through the canyon. If otherwise, the common right would be destroyed. The first company in a canyon has no right to exclude the second company from its right of way, on the ground that by the expenditure of more money by the second company, it would be possible to build a road through the canyon without encroaching upon the right of way of the first company. The act of congress which grants the common privilege forbids the exercise of such a right by the first company. Under this act of congress, canyons, passes and defiles become common highways for the passage of railroads, the same as the streets of a city or town are common highways for the passage of the people. The grant is to all railroads alike, and they must exercise the right in common. No one road can acquire any greater privilege than any other. The territorial legislature can impose no conditions or limitations upon the rights conferred by this act of congress. The act of congress is unconditional. The right of passage is absolute. The first company acquires no such property in its right of way as to enable it to claim damages from the second company that occupies such right of way, in its passage through the canyon. The first company acquires no property in the canyon, as a canyon, and can claim no damages from the second company for exercising rights and privileges that belong to each alike, without condition."

Then it appears to me from the pleadings and accompany-

ing affidavits in this case, that as to the occupancy of the
so called right of way of the Central Company by the Red
Mountain Company, there was no infringement of the
rights of the plaintiff whatever, and certainly not the least
reason for issuing an injunction or restraining order.   There
is nothing in the opinion of the supreme court of the United
States in conflict with these views.   On the contrary, wher-
ever applicable to this case, that opinion warrants the con-
clusions I have arrived at.

Mr. Justice Harlan says: " At the time of the passage of
the act of 3d March, 1875, congress had become convinced
of the importance to the country, and particularly to
the western states, of preserving canyons, passes and defiles
in the public domain, for the equal and common use of all
railroad companies organized under competent state or ter-
ritorial authority, and to which might be granted, by
national authority, the right of way.   It results from what
we have said, that the court below erred in enjoining the
Denver Company from proceeding with the construction of
its road in the Grand canyon.   The decree as entered can
only be sustained upon the assumption that the Canyon
City Company had, by prior occupancy, acquired a right
superior to any which the Denver & Rio Grande Railway
Company had, to use the canyon for the purpose of con-
structing its road.   But that assumption, we have seen, is
not sustained by the evidence, and is inconsistent with the
rights given by the acts of congress to the Denver Com-
pany.   The Denver Company should have been allowed to
proceed with the construction of its road, unobstructed by
the other company.   Where the Grand canyon is broad
enough to enable both companies to proceed without inter-
ference with each other in the construction of their respect-
ive roads, they should be allowed to do so.   But in the
narrow portions of the defile, where this course is imprac-
ticable, the court, by proper orders, should recognize the
prior right of the Denver & Rio Grande Railway Company
to construct its road.   Further, if in any portion of the

Grand canyon it is impracticable or impossible to lay down more than one road-bed and track, the court, while recognizing the prior right of the Denver Company to construct and operate that track for its own business, should by proper orders, and upon such terms as may be just and equitable, establish and secure the right of the Canyon City Company, conferred by the act of 3d of March, 1875, to use the same road-bed and track, after completion, in common with the Denver Company." *Railway Co.* v. *Alling,* 99 U. S. 480.

What, then, are the rights of these two companies in regard to the one crossing the track of the other, at grade, within the canyon of Ten-Mile creek? These rights are also regulated and defined by the act of congress and the territorial statute quoted, and are interpreted by the decision of the supreme court of the United States. There is no question involved here in regard to the right of one company to use the track or road-bed of the other, for the canyon plainly appears from the exhibits contained in the record to be sufficiently wide to easily admit of the proper construction of two tracks side by side. The act of congress says that the first company "shall not prevent the second company from crossing other railroads at grade." Of course if the territorial statute conflicts with the law of congress, the former must give way, or is rather, null and void. The territorial statute says: "If it shall become necessary for any other railroad company, passing through the territory, to cross or pass any other railroad track or defile, already constructed or surveyed, the same may be done without any compensation therefor, *except the actual damage done by so doing.*" It does not seem to me that there is any conflict between these statutes. The law of congress does not give one railroad company the right to damage the track of another without payment therefor, and if such a thing were attempted it could not be done under the constitution. Art. 5 of the Amendments; Pasch. Ann. Cons. pp. 44, 261–3. Then we must under-

stand the territorial statute as properly supplementing the law of congress, as is provided for in the act of congress itself. Sec. 3 of ch. 152, Acts 43d Cong. (18 Stat. at Large, p. 482). Then if the Central Company was entitled to the actual damages caused by the Red Mountain Company crossing its track, the same should be ascertained, fixed and paid before the crossing is made. There is nothing in the statute so declaring, but according to all analogies, in other cases of asserting the right of condemning property, such would clearly be the case. Hence the crossing of the track and the occupation of the depot grounds may be considered as occupying the same position, in this litigation. Such are the rights of these two companies as the same appear to me to be settled by the statutes of the nation and of this territory.

What are the remedies provided in those statutes for the enforcement of these rights? The law of congress is silent as to remedies, leaving the parties to the general power of courts in case of an infringement or deprivation of their rights. The territorial law provides for the passage of more than one railroad through a canyon "on equitable terms," and further that "in case of disagreement, upon application of either of the parties, with notice to the other, the same shall be adjusted by a court of competent jurisdiction." The statute in this respect is merely declaratory. It confers no jurisdiction upon any court which it had not already. A court of equity could adjust the conflicting claims of the parties in such a case without authority from the statute, even had it been intended to confer jurisdiction thereby, which does not seem to be the case. Then, so far as the remedies in this case are concerned, they must be determined independently of the statutes; and we are remitted to the general principles of law as laid down by the best writers and the decisions of our courts of last resort to determine them.

There is no question but that the court, on being invoked and due notice given, should have adjusted the equitable

terms on which these two companies should occupy the right of way given to them in common by the general government, and the crossing of each other's track where the same was necessary. But in the exercise of this unquestioned duty, was it proper or necessary to issue a temporary injunction or restraining order to protect the rights of the parties in the meantime? This is the question, and the only question, which properly came before this court on the appeal from the interlocutory order made by the judge below.

It must be borne in mind that this order was not granted nor issued until after the filing of both the complaint and answer, fully supported by the affidavits and exhibits attached thereto, and hence the case occupied the same position that it would have done had the order been made on a motion to dissolve on bill and answer. We must consider the allegations of all the pleadings, and may look to the affiavits and verified exhibits in determining the respective rights of the parties.

It is of course well settled that great caution should be exercised in the granting of injunctions, and that the rights of the applicant and the necessity for this relief must be clear to warrant the exercise of this extraordinary power. And again, the case must present one of irreparable injury, incapable of perfect pecuniary compensation, and wherein an adequate and speedy remedy is not provided at law, before a court of equity would be justified in interposing by injunction. These general principles are too well known and understood to require a citation of any authorities in support of them.

It is also said by high authority that "Upon an application to dissolve an injunction, it is proper for the court to balance the relative convenience or inconvenience which would arise from its continuance or its dissolution; and if, upon weighing such considerations, the continuance of the injunction is likely to work more mischief than would result from its dissolution, it is proper to grant the motion to dis-

solve." 2 High on Inj. sec. 1495. And it has been said in Alabama, as it has been often said before, that " where the allegations of the answer are full and responsive to the bill, and fully deny its equity, the injunction will be dissolved unless apparent irreparable mischief is likely to ensue from its dissolution, or unless some peculiar circumstances exist to warrant a departure from the rule." *Satterfield* v. *John,* 53 Ala. 127.

In a Georgia case, the supreme court says: " Where a discrimination can be properly made and the injunction can be dissolved in part and retained as to the remainder, if the answer satisfactorily denies a portion of the equity of the bill, a dissolution may be allowed *pro tanto." Edwards* v. *Perryman,* 18 Ga. 374.

Applying these well known principles of equity to the case at bar, in so far as the right of way is concerned, I fail to see any necessity for this extraordinary writ to prevent the use of the common right of way through the canyon. And indeed no injury is shown to have been done to the respondent, for no exclusive right exists under the statutes of the United States, and even if a right existed and had been invaded, a speedy and adequate remedy existed at law for the enforcement of that right by an action for damages, or by an application to have the "equitable terms" adjusted. The record shows that neither company had laid down a single rail, nor was ready to do so, much less to run a locomotive or a train of cars. No imminent danger of collision was to be apprehended. And what damage could accrue to one company by the other constructing a track parallel, or nearly so, at a distance of from sixteen to a hundred feet from its own road-bed, the record does not show, and I am at a loss to imagine.

But it is said that, in justice to the appellant, this injunction should be granted; because, if suffered to go on and build its road-bed, afterwards the court in adjusting the equitable terms might compel it to move the same at a great loss. The railroad company is supposed to know its

own business, and if it is sufficiently satisfied of its rights and willing to take the risks, I think it ought to be allowed to do so. At any rate, I do not know that courts are required to set themselves up as guardians for railroad companies. The province of courts is to settle controversies and to establish the rights of parties invoking their powers, and not to exercise a supervision over corporations generally.

But in so far as the station-grounds, and the respondents' track are involved, a different principle applies. Here the appellant company is endeavoring to subject the property of respondents to a servitude, to do which, the right of eminent domain, conferred by the sovereign, must be invoked, and necessarily all the forms must be complied with, and just compensation made, before any right arises in favor of the appellant. Hence, in these respects, the injunction was proper, and should have been granted by the judge below.

Then under all the circumstances surrounding this case, as developed in the record before the supreme court, and in accordance with the statutes of the United States and this territory, as well as the common law applicable thereto, it appears clear to my mind that the restraining order should have been limited to preventing an appropriation of the station-grounds of the Central Company, and the crossing of its track by the Red Mountain Company, until the proper condemnation proceedings were had in the one case and the necessity therefor had been shown in the other. Such a modification of the interlocutory order, it seems to me, under the statute, should have been made by the supreme court.