# Gilreath *v.* Carbon Hill & L. C. Coal Co.

### *Bill to Cancel Lease, Etc.*

(Decided June 30, 1908.   47 South. 298.)

1. *Injunction; Irreparable Injury; Preliminary Injunction.*—Unless it appears that irreparable injury is likely to result to complainant if he sustains his bill, and that respondent will not be seriously injured by the continuance of the injunction, the general rule is that a preliminary injunction will be dissolved on the coming in of an answer denying the material allegations of the bill.

2. *Same.*—Evidence in the case examined and held not to show that irreparable injury would result to the complainant so as to warrant the continuance of the preliminary injunction.

APPEAL from Walker Chancery Court.

Heard before Hon. ALFRED H. BENNERS.

Bill by Belton Gilreath as trustee against the Carbon Hill & Lost Creek Coal Company to annul a coal lease and to deliver up leased premises, and for an injunction. From a decree dissolving a preliminary injunction complainant appeals.   Affirmed.

BANKHEAD & BANKHEAD, and W. C. DAVIS, for appellant.   The court improperly granted a motion to dissolve the temporary injunction.—*Dennis v. M. & M. Ry. Co.*, 137 Ala. 657; *Bank v. Tyson*, 133 Ala. 474; *Whaley v. Wilson*, 112 Ala. 630; *Ninninger v. Norwood*, 72 Ala. 277.

ERNEST LACEY, for appellant. The court did not err in dissolving the temporary injunction.—*Harrison v. Murray*, 140 Ala. 527; *Simonson v. Kane*, 138 Ala. 221; *Jackson v. Jackson*, 91 Ala. 294. . The lease is a joint contract.—7 A. & E. Ency. of Law, 101-3. Long, as executor, was a necessary party complainant, and appellant cannot maintain the bill without showing that Long refused to become a party complainant.—*Harris v. Swannson*, 67 Ala. 299; *Masterson v. Phinizy*, 56 Ala. 338; 15 Ency. P. & P. 528-532.

SIMPSON, J.—The bill in this case was filed by the appellant against appellees—the Carbon Hill & Lost Creek Coal Company, P. M. Long, as executor of B. M. Long, deceased and Peyton Norvell—seeking to cancel a lease, to require said coal company to deliver up the leased premises, also to recover amounts due by said company for royalties, and to enjoin said company from operating the coal mines on the leased premises. A preliminary injunction was issued, and was dissolved, on the coming in of the answer, and on affidavits filed by both parties. The appeal is from the decree dissolving the injunction.

The parties to the lease were B. M. Long and John W. King, who leased to Evan Bynum and J. W. Shepard. Complainant has become the owner of the interest of said J. W. King, and said coal company is the successor of said Bynum and Shepard, the second parties. The lease grants to said second parties all the coal in a certain tract of land, with the exclusive right to mine and carry away the same, also the right to use timber, etc., to have and to hold for 20 years, "for a rent or royalty upon all salable coal and all coal utilized for cooking and other purposes," for which they were to pay "on all salable coal up to 50 tons per day a royalty of 7 cents per ton, and on all of said coal in excess of 50 tons per

day a royalty of 5 cents per ton." After the expiration of 12 months they were to pay at least on 50 tons per working day for 2 months, and afterwards on 100 tons per working day. It is provided in the lease that "if default be made in payment of any portion of said rent or royalty when due, for more than 60 days thereafter, the said parties of the first part, their agent or attorney, may re-enter and take possession, and, at their option, terminate this lease." There are no stipulations as to how the mining business is to be conducted.

The bill alleges that said coal company is insolvent, that it has not operated said property since March 2, 1894, and, excepting a few small payments, has paid no royalty since that time, but a few months ago said coal company re-entered on said property and commenced to mine, and complainant has refused his consent to such operation. The bill also states, on information and belief (without any allegation that a receiver had been appointed), that said coal company had practically abandoned said lease "upon the appointment of said receiver"; that in March, 1904, complainant notified said coal company that he elected to declare said lease forfeited, in accordance with the contract, and demanded possession of his undivided half interest; that the amount due complainant exceeds the value of the property of the said coal company; that neither said company nor said P. H. Norvell has the ability to pay the amount due. It also alleges that respondents are not operating the mines in a proper and tenantlike manner, but are exposing it to waste, so that if they are allowed to remain they will eventually consume all of the coal on the land. The bill also alleges that P. M. Long, as the administrator of the estate of B. M. Long, deceased, does not join in this bill, but has made a new contract with said coal company, by which additional rights have accrued to said estate; that Peyton Norvell is the president of said

coal company and has control thereof; that complainant has commenced an action of unlawful detainer against said coal company for the recovery of said property, but, if the injunction is not granted, irreparable injury will result to complainant before the termination of said suit.

The answer admits the lease, but states that there is a dispute between the heirs of John W. King, as to the ownership of the half-interest in said lands—the heirs of said John W. King denying that the complainant, Belton Gilreath, as trustee, is the owner of the same—and that there is now pending in the circuit court a suit between said heirs and said Gilreath to determine the ownership of said interest, and that said heirs have notified respondent not to pay a royalty or rent to said Gilreath. It denies that said coal company is insolvent, but states that the only debt against it is $1,692.03, due for royalties or rent, to the owner of the half interest formerly belonging to John W. King, and that it is able and willing to pay the same, when it is made known who owns said interest; that said coal company was placed in the hands of a receiver March 2, 1894, but that said receiver was discharged October 12, 1903, and the property and assets of said company returned to it, all debts against it having been paid; that during the time of said receivership a smaller amount of coal was mined, and said debts accumulated, but that since that time respondent has been working said mine, and has paid all rents or royalties due, except said $1,692.03. It denies that it is not working said mines in a proper and skilled manner, or in disregard of the life of the property. It admits making the new lease contract with P. M. Long, as executor of B. M. Long, but denies that said Long will derive any additional rights or benefits from it, and alleges that, as the original lease was made by said King and said B. M. Long (now deceased), said Gilreath, even

if he owns the half-interest of King, cannot have said contract canceled, unless his complaint is joined in by said P. M. Long, as executor of B. M. Long. It admits the institution of the unlawful detainer suit, but states that it has been continued from time to time by the plaintiff, and has been practically abandoned by him; denies that, if respondent is allowed to continue the operation of said mines, irreparable injury will accrue to the complainant; but, on the contrary, alleges that since mines are below water level, and kept dry only by heavy pumping machinery used in connection with its mining business, if said operations cease, said mines would be rapidly flooded, and valuable property of the respondent therein would suffer irreparable injury and probably total loss. The answer incorporates demurrers to the bill.

The appellant filed the affidavit of one Turner, a civil and mining engineer, to the effect that he had examined the mines in question; that they are not being operated with a due regard to the life of the property and according to approved mining methods, in that the coal is taken too closely, "not enough of pillar being left to properly support the roof and prevent breaks," and that, in his opinion, the result of such methods will be that "water will collect in said mine, through breaks in the surface, making it difficult to keep the same pumped out, and other falls are liable and likely to occur, which will cause flooding of the mine and make further operation of the mine difficult (if not impossible), and involve great expense; also that there may result loss of coal, and loss to the owners, in that said opening may have to be entirely abandoned and another opening made at great expense;" also that said water might be communicated to adjacent openings: also that the "entries therein were not driven on sights," and the opening, as

a whole, is a "haphazard affair, as against a model one"; and that, as a result of the manner in which said mines are being worked, "a large quantity of the coal adjacent to and ahead of the development as now being made cannot be taken from the mines, but will be lost to the owners." Gilreath himself, and one J. D. Roper, in their affidavits, in general terms concur with Turner, and the former states that the property of said coal company is assessed for taxation at $1,300, and the latter that said property is not worth over $5,000. These affidavits are contradicted by the affidavits filed by the appellee, towit, that of Bynum, a superintendent and mine foreman, and that of Parry, a mining engineer, who state that said coal company has spent large sums of money in placing lasting and permanent improvements (describing them) ; that the mines are being worked according to the most approved methods; that the present capacity is 200 tons per day, and would be considerably increased if it were not for the inability to get sufficient cars; that said company is solvent and amply able to pay all just demands against it; that the heirs of John W. King are claiming the interest claimed by Gilreath, and have notified said coal company that they will hold it responsible if it pays rents or royalties to Gilreath.

It will be noticed that the lease contract conveys to the lessee all of the coal in said lands, and there are no provisions of the contract directing how the mining operations are to be conducted; also that after the first two months the lessee is to "pay a royalty on at least 100 tons per working day on all marketable coal, and all coal utilized for cooking or other purposes, whether this amount is mined or not," so that, if the said coal company avails itself of its privileges under the contract, there will probably be no coal left, at the expiration of the lease, for the lessor to mine; whereas, if said lessee

neglects so to do, it is still liable for royalty on 100 tons per day to the extent of the amount of marketable coal in the land, so that, unless some injury is done to the land, it seems that the failure to leave the coal mines in first-class condition for mining is not within the provisions of the contract. But, however that may be, the answer denies all of the material allegations of the bill with regard to irreparable injury, the improper working of the mines, and insolvency.

The general rule is that, on the coming in of the answer denying the material allegations of the bill, the preliminary injunction will be dissolved, though it is true that the chancery court is vested with a large discretion in this matter, and such injunction will not be dissolved if it appears that irreparable injury is likely to result to the complainant, if he sustains his bill, and that the defendant will not be seriously injured by the continuance of the injunction.—*Satterfield v. John,* 53 Ala. 127, 132; *Chambers et al. v. Alabama Iron Co.,* 67 Ala. 353, 359; *Davis v. Sowell & Co.,* 77 Ala. 262, 275; *New England Mortgage, etc., Co. v. Powell,* 97 Ala. 483, 12 South. 55; *Turner v. Stephens,* 106 Ala. 546, 17 South. 706; *Simonson et al. v. Cain et al.,* 138 Ala. 221, 225, 34 South. 1019; *Harrison et al. v. Maury,* 140 Ala. 523, 527, 37 South. 361; *East & West R. R. Co. et al. v. E. T., V. & G. R. R. Co.,* 75 Ala. 275, 283, 284. The affidavits do not show clearly that irreparable injury will result to the complainant by the dissolving of the injunction, and they indicate that if the injunction is continued at least as great injury may result to the respondent, not only on account of the injury to its machinery, etc., but because of the shortening of its time to get out its coal under the lease.

As we think that the chancellor was justified, on general principles, in dissolving the injunction, we have not

deemed it necessary to discuss the question as to whether the complainant can maintain a bill to cancel the lease without the concurrence of his joint lessor.

The decree of the court is affirmed.

TYSON, C. J., and HARALSON and DOWDELL, JJ., concur.