THE ST. LOUIS, KENNETT & SOUTHERN RAILROAD COMPANY *et al.* v. WEAR, *Judge, et al.*

In Banc, June 30, 1896.

1. **Prohibition.** A writ of prohibition is a direct attack on the action of a court, and is applicable to check proceedings in equity as well as at law.

2. ———: OFFICE OF WRIT. Prohibition may be employed to prevent the execution of an order in excess of the jurisdiction of a court as well as to prevent cognizance of a cause which the court is not authorized to entertain at all.

3. ———: APPEAL: WRIT OF ERROR. Prohibition is not ordinarily granted where appeal or error can furnish adequate relief; but where unauthorized orders result in the seizure of a going railroad, the case permits the use of that writ.

4. ———. A writ of prohibition may be so shaped as to undo steps that have been taken beyond the jurisdiction of the court to which the writ goes.

5. ———. It is no bar to a writ of prohibition that the objection of want of jurisdiction was not made in the trial court where the order complained of was made in vacation, ex parte, and the defect of jurisdiction appears on the face of the record.

6. ———: RAILROAD: RECEIVER. The president of a competing railway can not properly be appointed receiver of a railroad under the Missouri statutes; but such an objection to a receiver is not available to sustain an application for prohibition where the fact on which the objection is based does not appear in the record of the court or judge sought to be prohibited.

7. **Appeal:** REFUSAL TO REVOKE RECEIVERSHIPS: STATUTE. An appeal lies in Missouri from an order refusing to revoke an interlocutory order for a receivership, and such appeals are to be summarily determined. The object of that law is to remove the hardships of long receiverships; and hence (to conform to legislative intent) such appeals must be permitted in vacation.

8. **Receiver:** APPOINTMENT WITHOUT NOTICE: PROHIBITION. Under the existing law of Missouri, an appointment of a receiver without notice can only be made for a period sufficiently long to permit a hearing as to the merits of such appointment; if made for an unreasonably longer period, the order will be unauthorized, and subject to be annulled by prohibition.

9. **Court:** CONTEMPT. Disobedience of an order, in excess of the powers of a court, is not a contempt.

10. **Receiver:** VACATION APPOINTMENT. A receiver may be appointed by a judge in vacation without notice to defendant, but such an appointment is invalid if no opportunity is given to show cause against the order for three months.

11. **Jurisdiction:** VACATION ORDERS. The inherent powers of a court must be exercised within its territorial jurisdiction, unless positive law enlarges the field for their use; but the statutory power of a judge in vacation he may exert out of the county, at least within his circuit.

12. **Receiver.** The power to appoint a receiver includes the incidental power in the court or judge to enforce obedience to an order for such appointment.

13. ———: WRIT OF ASSISTANCE. A writ of assistance can not properly be issued to put a receiver in possession of property, held by a stranger to the suit, under a title antedating the suit.

14. **Practice:** UNAUTHORIZED JUDICIAL ACTION: EXCEPTIONS. The want of an exception is no impediment to a review of unauthorized judicial action where no opportunity to except at the time was given.

15. **Receiver:** INSOLVENT CORPORATION. Whether a receiver of a going and solvent corporation can rightfully be appointed at the suit of a mere creditor at large, on account of mismanagement of the company, or to secure performance of some contract, *quaere.*

16. **Receiver, Compensation of:** PROHIBITION. A receiver's right to compensation and allowances for expenses does not depend on the correctness of the order of appointment, if the court had general jurisdiction to take such action. But the supreme court, in issuing a prohibition against such an order (made in excess of the power of the appointing court) will not allow compensation to the receiver out of the property which came to his hands under that order; but will leave the matter of such allowances to adjustment in the circuit court.

17. **Prohibition.** A prohibition against enforcing an order, in excess of the jurisdiction of a trial court, does not interfere with the general course of the cause in the latter court.

18. ————: PARTIES: RECEIVER. The objection that a receiver was not a necessary party to a proceeding in prohibition is too late when suggested, for the first time, in a return to the peremptory writ; any such objection must be held waived at that stage of the proceedings.

19. ————: PROCEDURE: CODE PRACTICE. The procedure for a writ of prohibition is governed by the code of civil practice in Missouri, except as otherwise provided in the act regulating the writ.

## *Prohibition.*

PEREMPTORY WRIT AWARDED.

THE proceeding before Judge WEAR was upon a petition in which Mr. Kerfoot was named as plaintiff and the "St. Louis, Kennett & Southern Railroad company, a corporation, and Louis Houck, E. F. Blomeyer, L. B. Houck, Theophilus Besel and E. S. McCarty, as directors in said Railroad Company, and the Pemiscot Railroad company, a corporation, and Robert G. Ranney, Leo Doyle, Robert T. Giboney, and John R. Jeannin, directors in said railroad company, and Louis Houck," defendants.

The substance of that petition (according to the statement of the counsel for defendants in the supreme court, which statement is regarded as sufficiently full for the purposes of the prohibition case) is as follows:

"On the 17th of March, 1890, there was organized under the laws of this state, the St. Louis, Kennett & Southern Railroad Company, with a capital of $180,-000, divided into 1,800 shares of the par value of $100 each, designed to be constructed and operated from Campbell to Kennett, Dunklin county, Missouri, a distance of 19 miles. Of this stock, A. J. Kerfoot held, and still holds, 108 shares, and E. S. McCarty, Harry H. Ferguson, Melvin L. Gray and George Deni-

son respectively held 108 shares. Prior to the — day of July, 1891, all the shares of the other stockholders in said company were purchased by said A. J. Kerfoot and E. S. McCarty.

"On July 8th, 1891, said Kerfoot and McCarty entered into a contract with relator, Louis Houck, by the terms of which said Houck agreed to transfer to said Kerfoot and McCarty ten interest-bearing extension bonds of the Cape Girardeau Southwestern Railway Company, each for $1,000, which were represented to be worth $\frac{81}{100}$ of their face value, and also to organize a construction company for the purpose of making a connection between the said railroads at the town of Campbell, said connection being of the approximated length of thirty miles. Of the stock of said construction company, said Kerfoot and McCarty were to receive 49 per cent, and on the construction of said connection, said Kerfoot and McCarty were to be superintendent and general manager respectively, at salaries of not less than $175 per month. By the terms of this contract, one half of the real estate belonging to said St. Louis, Kennett & Southern Railroad Company at Kennett was to be transferred to said Kerfoot and McCarty. In consideration of the foregoing, said Kerfoot and McCarty were to transfer to said Houck 300 shares of their stock in said railroad company, on the completion of the contract aforesaid.

"After the above terms of said contract had been agreed on, and set forth therein, additional stipulations were inserted by said Houck in said contract, without the knowledge and consent of said Kerfoot and McCarty, to the effect that in no event was said Houck to be personally responsible for the fulfillment of said contract, and that if said contract should not be kept on his part, such failure should not affect in any wise the said contract, and that 1,360 additional

full paid shares of stock in said company should be issued to said Houck, and that the 240 shares of said Kerfoot and McCarty should be considered full paid.

"While the bonds above referred to were by said Houck transferred to said Kerfoot and McCarty, not only were they not of the value represented by said Houck, but of no value whatsoever; and while said construction company was organized and certain certificates of its stock transferred to said Kerfoot and McCarty, the purpose of its organization, the construction of a connection between the aforesaid railroads, was not only never accomplished but never attempted to be carried out, and said certificates are consequently of absolutely no value.

"Shortly after the transfer of the 300 shares of the stock of the St. Louis, Kennett & Southern Railroad Company, by said Kerfoot and McCarty to said Houck on the faith of the performance of the terms of said contract by said Houck, said Houck held a meeting of the pretended shareholders holding shares in excess of those held by said Kerfoot and McCarty,—to whom no notice of said pretended meeting was ever given or attempted to be given, and of which they had no knowledge or information,—whereat said pretended shareholders did attempt and pretend to issue to said Houck, 1,360 additional shares of stock of said railroad company. This action of said pretended shareholders, respondent Kerfoot claims to be fraudulent, illegal and void, against which he has protested and now protests, and in affirmance of which he has done and will do nothing.

"By reason of the aforesaid facts, it is claimed that the consideration for the transfer of said stock to Houck has failed, and was only brought about by the false and fraudulent representations of said Houck with

the intent to cheat and defraud said Kerfoot and McCarty.

"It is also charged in said petition that having thus fraudulently obtained control of said railroad, said Houck and the other relators have mismanaged and been guilty of gross negligence and misconduct in their trust capacity as directors, officers, etc., and fraudulently combined to cheat and defraud respondent, Kerfoot, and to render his shares of stock valueless, etc., together with those of other of the stockholders.

"That the other relators as directors of said company are under the influence and control of said relator Houck, and conform their actions to accomplish his fraudulent and illegal purposes and to carry out his unlawful designs.

"That said Louis Houck is the principal shareholder in a company organized to construct a railroad through the counties of St. Genevieve and Perry in the State of Missouri, which said road is located many miles from the St. Louis, Kennett & Southern and that, being entirely without credit, said Houck has used in the construction of said road divers funds belonging to said St. Louis, Kennett & Southern Railroad Company, without any authority so to do from the stockholders and directors of said company, although with the pretended authority of said Board of Directors.

"That said Houck is also the principal stockholder in a certain railroad in process of construction through Scott county, Missouri, and in the construction of this road said Houck has illegally and fraudulently in like manner and to like ends appropriated the funds of said St. Louis, Kennett and Southern Railroad Company.

"That on or about February 15th, 1892, the Pemiscot Railroad Company was organized—and constructed during the year 1894—of which said Houck was the real and substantial owner; that in the construction of

this road, said Houck wrongfully and fraudulently appropriated certain of the funds of said St. Louis, Kennett and Southern Railroad Company, in the manner and with the purposes as aforesaid.

"That on the 22d day of April, 1895, said Houck in furtherance of his said designs to destroy the value of said Kerfoot's stock and of the property of said St. Louis, Kennett & Southern Railroad Company, caused the said pretended stockholders of said company to adopt a contract attempted to be entered into between the directors of said last named companies, whereby the two said railroads should be consolidated into one road. Of none of these proceedings was said Kerfoot notified and of none of which did he have any knowledge or information, nor did he in any manner participate therein.

"Under this pretended contract of consolidation, the stock of the two companies was to be called in and new stock in the consolidated company issued in lieu thereof. That said contract was submitted to a pretended meeting of said shareholders of the St. Louis, Kennett & Southern Railroad Company, and the minutes of said meeting purport to show that said contract was adopted by a majority of its stockholders, all of which is false.

"That a copy of said minutes and also the minutes of a similar meeting of the shareholders of said Pemiscot Railroad Company, showing a like pretended ratification of the same contract, has been filed in the office of the Secretary of State of the State of Missouri.

"The said attempted consolidation was fraudulent and void in that it was not effected in conformity with the laws of the State of Missouri, and with a fraudulent intent and purpose, and because no notice of said meeting was given said Kerfoot, who was not present thereat, although in the copy of the minutes of said meeting on

file with the Secretary of State, he is falsely represented as voting in favor of said consolidation.

"That the terms of said contract of consolidation were not carried out by said Houck or the other relators.

"That the earnings of said company are not sufficient to discharge its accruing obligations, and that the salaries and wages of its employes have not been paid for the last six months, and that it is now in debt to its said employes to the extent of many thousands of dollars.

"That by reason of the acts aforesaid, said company is unable to secure supplies needed in the operation of the road; that the rolling stock and other properties are in need of repair and replenishing, which the relators have failed and refused to have done; that no provision has been or is now being made for the extinguishment of the outstanding debts and bonds hereafter to accrue; that said Houck on the 2d day of December, 1895, did remove respondent Kerfoot, from his position as superintendent of said road, and did appropriate his salary to himself through one of the relators, his kinsman, Louis B. Houck.

"That the said Pemiscot Railroad Company is and was at the time of the attempted consolidation aforesaid, hopelessly insolvent; that its debts have not been paid, except such as were paid out of the earnings of the St. Louis, Kennett and Southern Railroad Company, as aforesaid, and that said attempted consolidat on was but a part of the plan of said Houck to secure and absorb both properties.

"That by reason of all of which the said St. Louis, Kennett & Southern Railroad Company has become greatly embarrassed financially and that a continuation of such acts of mismanagement will bring about the insolvency and bankruptcy of said corporation.

"The prayer of the bill is that relators as officers of said company be restrained from diverting further amounts of money, from the treasury of said company; that they be suspended from office as directors, etc.; and that a new election be ordered to be held to supply the vacancy thus to be created; that an accounting be had with respect of the funds diverted as aforesaid; that a decree be rendered annulling said pretended consolidation, and restoring the funds so diverted from the treasury of the St. Louis, Kennett & Southern Railroad Company; that said 300 shares of stock, or their proportionate interest therein, transferred by said Kerfoot and McCarty, be restored to them, and that said contract under which the transfer was made be annulled for reason aforesaid; that said issuance of the 1,360 shares of stock be annulled and canceled for the reasons before mentioned; and that said Houck be required to account for the benefits that have accrued to him by reason of the transfer of said 300 shares of stock and the issuance of said 1,360 shares, and that he be ordered to pay one-half of the same to said Kerfoot.

"An offer is made to return to said Houck one-half of the shares of stock in the construction company before mentioned, and like offer with respect of said extension bonds.

"The petition then asks for the appointment of a receiver pending the determination of the issues tendered, in order to prevent the misappropriation and to insure the preservation of the properties involved."

The order of Judge Wear, appointing the receiver, is as follows:

"STATE OF MISSOURI, ⎫
                    ⎬ ss.
County of Dunklin.  ⎭

     "In the Circuit Court, July term, 1896.

"A. J. Kerfoot, Plaintiff, ⎫

          v.

"The St. Louis, Kennett and Southern Railroad Company, a corporation, and Louis Houck, E. F. Blomeyer, L. B. Houck, Theophilus Besel and E. S. McConley as directors in said railroad company, and the Pemiscot Railroad Company, a corporation, and Robert G. Ranney, Leo Doyle, Robt. T. Giboney, Louis Houck and John R. Jeannin, directors in said railroad company, and Louis Houck, Defendants. ⎭

*"In vacation.    Order of appointment of receiver:*

"Now, on this 11th day of April, 1896, comes A. J. Kerfoot, and presents to me, John G. Wear, judge of the Circuit Court of Dunklin County, Missouri, in vacation, at chambers, in the city of Poplar Bluff, in the county of Butler, in the State of Missouri, a certified copy of his petition filed in the office of the clerk of the said Circuit Court of said Dunklin county, in a certain cause entitled above, and with it he presents his motion verified by his affidavit, by which he asks the appointment of a receiver of the real and personal property of the said defendant corporations named above, which said motion is hereto attached.

"And the said John G. Wear, judge as aforesaid, having heard said motion, and having duly considered

the same, together with the facts offered in connection therewith, does hereby order that Samuel W. Fordyce, of the city of St. Louis, Missouri, be and he is hereby appointed as receiver of all and singular the real and personal property, wherever situate, of the said St. Louis, Kennett and Southern Railroad Company, and of the said Pemiscot Railroad Company, and that he shall immediately qualify as such, by giving bond for the faithful performance of his duties as such receiver, in the sum of twenty-five thousand dollars; and that, after his qualification as such receiver, having duly taken the oath prescribed, he shall proceed to the county of Dunklin and to the county of Pemiscot, in the State of Missouri, and shall take charge of the said property of the said railroad companies, including the rolling-stock, the depots, books and papers of the said companies, and that he shall then take an inventory of all of the said property so taken charge of by him; that he shall manage the said railroad properties carefully and discreetly; that he shall continue to fulfill and perform all of the existing contracts of the said railroad companies, until the further order of the court in the premises; that he shall discharge all of the current expenses of the management as such receiver out of the earnings of the said roads, while they are in his hands or custody; that he shall keep an accurate and exact account of the expenses and of the income of the two said railroads, the one extending from Campbell, Missouri, to Kennett, Missouri, and the other extending from Kennett, Missouri, to Caruthersville, Missouri, preserving the said expenses and income separate in all of the transactions of himself as such receiver; and that he shall keep and maintain the said properties in good condition until the further order of the said Circuit Court of Dunklin county, or the judge thereof in vacation. And that he make a full report of his acts

as such receiver to the next term of said Court, unless ordered to do so before that date.

"It is further ordered that each and every agent and employe of the said defendant railroad companies, named above, whether regarded as the employes of the said companies as one corporation or as two separate corporations, shall, upon the demand of said Samuel W. Fordyce, after his qualifications as such receiver, immediately yield to said receiver the possession and control of all the property, books and accounts of the said defendant railroad companies, or company, and the said Louis Houck and the other defendants named as the officers and directors of said defendant companies are hereby ordered to turn over and deliver to the said receiver all of the books and papers of the said company or companies which pertain in anywise to the management and business of the said company or companies.

"It is further ordered that in the event that any such employe of said company or companies shall fail or refuse to so deliver to said receiver the property in his said care and custody or should said defendants fail or refuse to so deliver to said receiver the books, papers or other property of the said defendant company or companies, the said receiver shall at once report the person so failing or refusing to the undersigned Judge for his further orders in that behalf.

"The said defendants and their employes are hereby enjoined and forbidden from in any manner interfering with the said possession of the said receiver, after he shall have obtained the possession of the said property hereby ordered into his hands, until the further orders of the said Court, or of the judge thereof, in vacation.

"It is further ordered that this order be filed in the office of the clerk of said court of said Dunklin

Vol. 135 mo—16

county, and that a certified copy thereof be furnished the said Samuel W. Fordyce as such receiver, and that a duly certified copy thereof be served upon the defendants named above.

"It is further ordered that the said defendants be notified to appear before me, the undersigned judge of the circuit court, at the next term of the Circuit Court, in the county of Dunklin, in the State of Missouri, then and there to show cause, if any they can, why the appointment hereby made should not be continued and the property kept by the said receiver, pending a hearing upon the merits of this controversy, and until the said defendants may be heard upon the merits thereof. And the service of a duly certified copy hereof shall be deemed sufficient service of the said notice.

"Done at chambers, in the city of Poplar Bluff, in the county of Butler and State of Missouri, this 11th day of April, 1896.

"JOHN G. WEAR, Judge."

The writ issued by Judge Wear for the seizure and delivery of the property of the railroad company, is as follows:

"STATE OF MISSOURI, } ss.
   County of Dunklin. }

"In the Circuit Court, to July term, 1896.

"A. J. Kerfoot, Plaintiff,

v.

"The Saint Louis, Kennett & South_ern Railroad Company, a corpora_tion, and Louis Houck, E. F. Blomeyer, L. B. Houck, Theoph-ilus Besel and E. S. McCarty, as Directors in said Railroad Com-pany, and the Pemiscot Railroad Company, a corporation, and Rob-ert G. Ranney, Leo Doyle, Robt. T. Giboney, Louis Houck and John R. Jeannin, Directors in said Railroad Company, and Louis Houck, Defendants.

"*To W. G. Petty, Sheriff of Dunklin County, Missouri*:

"WHEREAS, it appears to me, John G. Wear, Judge of the Circuit Court of said Dunklin county, Missouri, sitting in chambers, in vacation, by the report of S. W. Fordyce, whom I did, on the 11th day of April, 1896, appoint as receiver of all of the property of the said St. Louis, Kennett & Southern Railroad Company and of the said Pemiscot Railroad Company, which report is duly verified, that the said Samuel W. Fordyce did, on said 13th day of April, 1896, proceed to the town of Kennett, in said Dunklin county, Missouri; and did then and there cause to be served upon one Louis B. Houck, whom he found in the charge and management of the said property of the said railroad companies, or company, named above, a duly certified copy of my order made in the above entitled cause, appointing

him, the said S. W. Fordyce, as such receiver, and that he did then and there demand of the said Louis B. Houck, the possession and custody of the property of the said railroad companies, or company, and did demand that the said Louis B. Houck, relinquish the possession and control thereof to him, the said receiver, and that said Louis B. Houck did then and there fail and refuse so to turn over and deliver to said receiver the possession and control of the said railroad, or railroads, and of the said property of the said railroad company, or companies, and did then and there fail and refuse to relinquish the said possession and control thereof; and that the said Louis B. Houck did willfully violate the commands of my said order of appointment of the said Samuel W. Fordyce, as such receiver.

"This is, therefore, to command you, that you do forthwith summon the power of the said county of Dunklin, if necessary, and that you proceed to the property of the said railroad company, or companies, named above, and to its railroad office or offices, wherever situate or found in your county, and that you put and place the said Samuel W. Fordyce, as such receiver, in charge, custody and possession thereof, and that you dispossess therefrom and from every portion or part thereof, the said Louis B. Houck, or any other official or employe, or agent of the said Louis B. Houck, or of the said railroad companies named above, or of any defendants named herein above.

"That you take and deliver to the said receiver all of the engines and cars and other equipments of the said railroad or railroads, all of its books and papers, its tickets and other movable property, its depots and ticket offices, and every other property of every description.

"You are further commanded that you immediately take unto your custody the body of the said Louis

B. Houck, and him safely keep, so that you have him, the said Louis B. Houck, before me at chambers, in the city of Poplar Bluff, in the county of Butler and State of Missouri, on Thursday, April 16, 1896, then and there to show cause, if any he can, why he should not be committed to the common jail of said Dunklin county, for his disobedience of my said order of appointment of said receiver.

"And you are further commanded that if any other person shall attempt to obstruct the full and free execution of the above order, or to aid or assist in the attempt to remove any of the said property from the said county of Dunklin, except by orders of the said receiver, you shall, by virtue hereof, arrest each and every such person, and have him or them before me at the time and place designated above, then and there to be further dealt with according to law.

"In testimony whereof, I have hereunto set my hand, at chambers, in the town of Bloomfield, in the county of Stoddard and State of Missouri, this 14th day of April, 1896.

"JOHN G. WEAR,
"Judge of the Circuit Court of Dunklin county, Missouri."

The return of the sheriff upon the above writ follows:

"Executed the within writ in the county of Dunklin and State of Missouri, on the 14th day of April, 1896, by placing S. W. Fordyce, as receiver, in charge of the depot and all of the property of the above-named company or companies, which were at that time at the town of Kennett and in said county, including one engine and two passenger coaches, which were afterwards taken away by L. B. Houck and carried eastward into Pemiscot county, Missouri. I did further, on the 15th day of April, 1896, put the said receiver

in charge of all the remainder of the property of the said companies, or company, in my said county. Said Louis B. Houck was not arrested as ordered above because he left the said county of Dunklin.

"W. G. PETTY.

"Sheriff of Dunklin county, Mo."

Other necessary facts appear in the opinion of the court.

*M. R. Smith* for relators.

(1)   By the state constitution this court is vested with a general superintending control over all inferior courts with the power to issue writs of *habeas corpus, mandamus, quo warranto, certiorari* and other original remedial writs, and to hear and determine same. State Constitution, art. 6, sec. 3; *State ex rel. v. Ross*, 122 Mo. 164; *State v. ·Mead*, 36 Mo. 232; 8 Bacon's Abr., p. 226. That this court has authority to superintend the powers of inferior courts as to matters of their jurisdiction we assume will not be disputed. (2) Prohibition is the proper remedy to correct the acts of an inferior court, whether done by such court in vacation or term time, when such acts constitute an abuse, or, are in excess of his jurisdiction and power as a judge, ·or a court. *State ex rel. v. Court of Appeals*, 99 Mo. 221; 8 Bacon's Abr., 221 (H.); *London v. Cox*, L. R. 2 H. L. 279, 280; Works on Jurisdiction and Courts (1894), p. 628, note (3); High on Extra Rem. [3 Ed.], secs. 762 and 764*a; Appo v. People*, 20 N. Y. 531; *Ex parte Braulacht*, 2 Hill (N. Y.), p. 368. (3) Prohibition may be granted to prevent a "violation of some fundamental principle of justice or the transgression of the bounds prescribed by law." *People ex rel. v. Nichols*, 79 N. Y. 592; *State ex rel. v. Kirkland*, 41 S. C. 35; *Hudson v. Sup. Court*, 42 Mich. 248; *West v.*

*Ferguson*, 16 Gratt. 270.    (4) This being a suit to dissolve a corporation, if it can be maintained, which relators deny, is in effect, tantamount to a proceeding by *quo warranto* at the relation of the state for a forfeiture of the franchises of the company with a prayer for a receiver.    *Havemeyer v. Sup. Court*, 84 Cal. 329; *Com. v. Order of Vesta*, 156 Pa. St. 531; *Lincoln & Co. v. District Court*, 38 Pac. Rep. 589.    (5) Respondent Judge John G. Wear, in making the order in vacation on the eleventh day of April, 1896, appointing Samuel W. Fordyce receiver of the old St. Louis, Kennett & Southern Railroad Company and the Pemiscot Railroad Company, under the allegations in respondent Kerfoot's petition and the circumstances surrounding the same, was made in excess of his jurisdiction, and such order of appointment is therefore void, and the acts performed under it are subject to annulment or correction by this court, by its writ of prohibition.    *Edison v. Edison & Co.*, 29 Atl. Rep. 196; High on Receivers [3 Ed.], sec. 84 and sec. 667, note (1); *Groesbeech v. Dunscomb*, 41 How. Prac., p. 321; *Grovenstine's Appeal*, 49 Pa. St. 321; *Havemeyer v. Supreme Co.*, 84 Cal. 329; *In re Clearwater v. Meredith*, 1 Wall. 25; *Shields v. Ohio*, 95 U. S. 322.    (6) The petitioner sues two independent corporations jointly, without an allegation showing their joint liability in any manner to him, unless it be upon the mistaken theory, that trust money is followed into the hands of a third party, which in this case can have no application whatever. *Young v. Rollins*, 85 N. C. 485; *Harrison v. Smith*, 83 Mo. 210.    (7) The petition nowhere alleges, that either of said railroad companies are indebted to petitioner in any designated sum.    In fact, does not allege that he is a creditor of either company, but shows that the only interest that he has or can have in the old Kennett company is that of a shareholder.    *Petersville*

*Lumber Co. v. Soap Co.*, 2 Pa. Dist. Rep. 802; High on Receivers [3 Ed.], sec. 11, note (4); Green's Brice's Ultra Vires, p. 675. (8) The petition of respondent Kerfoot must have been scanned very cursorily by Judge Wear, before appointing Fordyce receiver, as it falls far short of being a bill that would authorize judicial action so severe in character. But little judicial acumen is needed, however, to detect the lineaments of sham and hypocrisy all through it, on every page. *Atbers v. Exchange*, 45 Mo. App. 206; *Hawes v. Oakland*, 104 U. S. 450; *Dammmyer v. Coleman*, 11 Fed. Rep. 100; *Convers v. Dimock*, 22 Fed. Rep. 573. (9) Prohibition is the proper remedy to nullify and avoid the acts of the court, acting in a proceeding without jurisdiction. Relators claim that the Honorable John G. Wear in appointing Samuel W. Fordyce as receiver, not only abused and exceeded his jurisdiction, but he acted without jurisdiction whatever, for the plain reason, among others, that the consolidation of the old Kennett road and the Pemiscot railroad, which, as relator's suggestion shows, operated as a dissolution of the Kennett and Pemiscot companies, and they could not be sued, at least without joining the relator company, as it was, and is the owner of all the property theretofore owned by the two old defendant companies. *Thompson v. Abbott*, 61 Mo. 176; 2 Cook on Stockholders, p. 1545; 1 Thompson on Corporations, sec. 310; 4 Brightly's (N. Y.) Dig., p. 6466. (10) A receiver, as we have already seen, can not be appointed to take the property of one not a party to the suit. High on Receivers [3 Ed.], sec. 84, and note 5; *Havemeyer v. Supreme Court*, 84 Cal. 329; Beach on Receivers, sec. 7, p. 9; 2 Jones on Mortgages, sec. 1516, note 6; *Florida v. R'y*, 15 Fla. 201. (11) The following authorities show incontestably the operation

of consolidating two or more railroad companies. "By the contract entered into between the companies, for the consolidation and the secretary of state's certificate of incorporation thereof, worked a dissolution of both the companies." *Evans v. R'y*, 106 Mo. 601; *Shields v. Ohio*, 95 U. S. 322; 1 Thomp. Corp., sec. 355, p. 247; *Miner v. R'y*, 123 N. Y. 242; 2 Morawetz on Corp., sec. 933 note (2) and secs. 939–957; 2 Cook on Stockholders, sec. 910, p. 1545, note 1; *State ex rel. v. R'y*, 99 Mo. p. 41. (12) The complaint of respondent, Kerfoot, that he was discharged in violation of terms of the contract between himself and relator Houck can avail nothing, even if the contract had not been fulfilled, as it was however, such contracts are against public policy. *West v. Camden*, 135 U. S. 521. (13) The bench writ or order issued by Judge Wear at Bloomfield, April 13, 1896, in vacation, directed to the sheriff of Dunklin county, to seize the old St. Louis, Kennett & Southern Railroad and the Pemiscot railroad, all their appurtenances and equipments, and the same deliver to Col. Fordyce as receiver, was void, as being made without authority, or at least in excess of authority. Const., art. 16, sec. 38; Works on Courts, sec. 36, pp. 245, 246; 2 Dan'l Chan. Prac., pp. 1008, 1009, 1044, and note 6, and page 1047. (14) When any order or decree has been served on the party against whom issued and he disobeyed it, a writ of attachment will be issued by the record and writ clerk. 2 Dan'l Chan. Prac., pp. 1047–1050. (15) See in this connection the powers of a court at chambers. His powers to act are no more, but the same in vacation as in term time. Works on Courts, sec. 58, pp. 372, 376; Works on Courts, sec. 59, pp. 376, 378, and notes; Beach on Receivers, sec. 230; *Miller v. Jones*, 39 Ill. 54.

*W. S. C. Walker* and *Boyle, Priest & Lehmann* for respondents.

(1) Prohibition lies only where the inferior court proposes to exceed its lawful jurisdiction as to the person or subject-matter, or in the enforcement of its rulings in a manner or by means not intrusted to its judgment or discretion. 2 Spelling on Ex. Relief, 1396; *Roper v. Cady*, 4 Mo. App. 593; *State ex rel. v. Laughlin*, 7 Mo. App. 530, and cases cited.. "The court will exercise its authority to issue writs of prohibition to courts of inferior jurisdiction only in cases where such courts clearly exceed their jurisdiction, or attempt to usurp a jurisdiction belonging to some other forum." 2 Spelling on Ex. Relief, p. 1402; *State ex rel. v. Fox*, 85 Mo. 61. "The plain import of all the authorities is that if the inferior tribunal have jurisdiction to issue the writ or make an order, a mistaken exercise of the jurisdiction, or a misapplication of this acknowledged jurisdiction, even though the case made by the petition is fatally defective, will not justify. a resort to the extraordinary process of prohibition." 2 Spelling on Ex. Relief, p. 1408. See, also, *Woodward v. Superior Court*, 30 Pac. Rep. 535; *State ex rel. v. Court of Appeals*, 99 Mo. 221. (2) Under the facts set forth in the petition in this case the court was possessed of jurisdiction of the cause, and under the showing made it was not in excess of its jurisdiction to appoint a receiver, without notice to the defendants. The most casual reading of the petition will disclose a statement of nearly every cause for which courts of equity are justified in the appointment of receivers for corporations. Insolvency, acts of mismanagement, of misappropriation, of misconduct, abuses of official trust, a conspiracy to defraud the stockholder, in fact, everything which makes the appointment of a receiver necessary is set

forth in minute detail in the petition.  No defect in
the petition, as a petition, has been pointed out, or if
the petition should be found defective this court can not
in such a proceeding as this pass upon that question.
The appointment of a receiver without notice was an
act within the power of the court, and even if not, it
is not such an excess of jurisdiction as may be taken
advantage of by prohibition.  *Oil Run Petroleum Co.
v. Gale*, 6 W. Va. 545; *Ashhurst v. Lehman*, 86 Ala.
371; *Sims v. Adams*, 78 Ala. 397; *French v. Gifford*,
30 Iowa, 160; *Moritz v. Miller*, 87 Ala. 332; *Crowder
v. Moore*, 52 Ala. 221; *People v. Norton*, 1 Paige, 17;
*Fricker v. Peters, etc., Co.*, 20 Fla. 256; *Jones v.
Daugherty*, 10 Ga. 273; *Johns v. Johns*, 23 Ga. 36;
*Maynard v. Railey*, 2 Nev. 313.

BARCLAY, J.—This action is original in the supreme
court.  The plaintiffs are the St. Louis, Kennett &
Southern railroad company, Louis Houck, and a
number of other shareholders in said company.

The defendants are the learned circuit judge of the
22d circuit, and Messrs. Kerfoot and Fordyce, plaintiff
and receiver in the proceeding before the judge.

The object of the action is to obtain a writ of pro-
hibition against the enforcement of certain orders
entered by the judge in vacation of the court. (Copies
of those orders will be printed in the official report.)

The claim of plaintiffs here is that the orders are
void, because made without jurisdiction, or, at least,
that they are in excess of any jurisdiction which the
circuit judge might properly exercise in the proceed-
ing as it then stood.

In response to a preliminary rule in prohibition,
defendants made separate returns, and plaintiffs replied
thereto.  It will not be necessary to state the terms of

those pleadings at any great length. The facts on which the result of the action in this court depends are few, and need not be obscured by elaboration of the minor features of the controversy. Those facts are also admitted by the pleadings.

The old St. Louis, Kennett and Southern railroad company (which we shall call the old Kennett road for a short name) was incorporated in 1890 to operate a railroad about 19 miles long between Campbell and Kennett in Dunklin county. A new company of the same title was formed in 1895 by an alleged consolidation of the old Kennett road and the Pemiscot railroad company, which had been organized in 1892 to extend the railroad from Kennett to Caruthersville. The latter place is in Pemiscot county, on the Mississippi river. The validity of that consolidation is attacked in the petition filed in the case on the circuit. The ostensible public evidence of the consolidation is the certificate issued by the secretary of state of Missouri, proclaiming compliance with the statutory requirements in regard to the union of such corporations. R. S. 1889, sec. 2567.

The property formerly owned by the two old companies was in custody of the new Kennett road which operated a line about 44 miles in length from Campbell to Caruthersville (via Kennett) when Kerfoot's petition was filed. For the purposes of the hearing in this court the version which that petition gives of the dealings between Kerfoot, Houck and the companies will be accepted as reliable in determining the propriety of the proceedings which followed. The statements of that petition need not be repeated. They will be referred to as occasion requires.

An ex parte application for the appointment of a receiver was made to the circuit judge in vacation, on

the petition and representations additional. The substance of those representations is that, if such appointment were not made, the property of said railway companies would "be wasted pending the determination of the said litigation," and the rights of the plaintiff "suffer irretrievable injury," etc.

The application excused the want of notice thereof on the ground "that the giving of the said notice would tend to · defeat the object sought to be obtained by the said appointment, in this, to wit: that the said Louis Houck is in exclusive charge of all of the books showing the condition of the affairs of the said companies, and has persons in charge of the various offices and property of the road who are entirely under his control; that the said Louis Houck would so handle and dispose of the books and property of the said companies that the order of appointment of a receiver, if made upon notice, would not avail, and would not be obeyed, the books and movable property of the said companies would be removed from the said counties in which said property is situate and would be removed from the state, so that the said processes of the said court would not be effectual to compel the delivery thereof to the receiver which might be appointed;" "that by the removal of the said books of the said companies, the object of the appointment of such receiver would be frustrated, and his performance of his said duties would be made difficult if not impossible; that all of the said defendants, directors in the said corporations, are under the control of the said defendant, Louis Houck;" and "that if the said defendants should have notice of this application for a receiver, they would resort to various tricks and devices to delay this proceeding, and, in the meanwhile, to further wreck said property; that the said defendants now are plotting to deprive this plaintiff of his property

interest in the St. Louis, Kennett & Southern Railroad Company by means of a fictitious and fraudulent assessment upon his said stock; and that the giving of the said notice would have the effect to destroy the benefits sought in the appointment of the said receiver."

The circuit judge granted the application, without notice to defendants, and made a vacation order, at Poplar Bluff, in Butler county, the terms of which are set forth at large in the statement accompanying this opinion. The main features of the order are that Mr. Fordyce was appointed receiver of all the real and personal property of defendant companies; he was directed to immediately qualify by giving bond, etc., and then to take charge of all the real and personal property of said companies, "including the rolling stock, the depots, books and papers of the said companies;" to "manage the said railroad properties carefully," and "continue to fulfill and perform all of the existing contracts of the said railroad companies until the further order of the court in the premises;" to keep accounts, make reports, etc. The order further directed defendants to deliver all said property to said receiver, and enjoined them from interfering with the possession of the latter. The defendants were further ordered to appear before the judge "at the next term of the circuit court in the county of Dunklin," then and there to show cause why the receivership should not be continued, "pending a hearing upon the merits."

This order was dated, April 11th, 1896. The next term of the Dunklin circuit court, as appointed by law, will begin on the second Monday (the 13th) of July, 1896. Sess. Laws, 1892, p. 13, sec. 50.

An ordinary summons to defendants to appear and answer the petition in the cause, at the opening of the July term of the circuit court of Dunklin county, was issued on the 10th of April, 1896.

Mr. Fordyce, at the time of his appointment as receiver, was president of the St. Louis Southwestern railroad company, popularly known as the "Cotton Belt" route.   It is alleged in the petition for prohibition in this court that the latter is "a competitive railroad company, whose policy has ever been hostile to relator railroad company for the reason that it occupies the same territory for business," and that the connection of the Kennett road with the Mississippi river secures to the people of Dunklin and Pemiscot counties advantages of competition between that road and the "Cotton Belt."   There is no denial of these allegations in the return of any of the defendants to the preliminary rule in this court; and like statements as to the roads being in competition appear in the replies to the returns.   The above recital shows the substance of the charges on that point.

When Mr. Fordyce, in obedience to the order for his appointment, demanded possession of the Kennett road, the officers in charge of the property refused to deliver it.   That demand was the first actual notification given to them of the receivership.

After the refusal to turn over the property, an application was made to the circuit judge for further action, whereupon he issued the writ or warrant, of date, April 14, 1896, to the sheriff of Dunklin county, directing him to summon the power of his county to put the receiver in possession of the property of the two railroad companies, and to dispossess every official of said companies.

The warrant is recited in full in the statement accompanying the opinion.   But it may be properly noted here that the warrant was issued in Stoddard county; it directed the arrest of Louis B. Houck and that he be produced before the circuit judge at chambers in the city of Poplar Bluff, Butler county, April

16, 1896, to show cause why he should not be committed to jail for disobedience of the order appointing the receiver.

Under the last described writ, the sheriff put Mr. Fordyce, as receiver, into possession of the property of the Kennett railroad in Dunklin county and otherwise returned the order unexecuted for the reasons appearing in his return.

At that stage of the case, the application for a prohibition was presented to the supreme court, and a preliminary rule issued.

1. It is urged by defendants that prohibition is not applicable to the situation existing on the circuit in the receivership case, and that no review can occur at this time as to the propriety of the disputed orders.

But if those orders were beyond the legitimate authority of the judge, the enforcement of them may be prohibited. *Morris v. Lenox* (1843) 8 Mo. 252. The fact that the suit in the circuit court invokes the equity powers thereof does not preclude the use of a prohibitory writ to keep the judicial action within the the limits marked by law. A court of equity, no less than a court of law, may be called back within the boundaries of its rightful jurisdiction by the process of prohibition.

Where a court or judge assumes to exercise a judicial power not granted by law, it matters not (so far as concerns the right to a prohibition) whether the exhibition of power occurs in a case which the court is not authorized to entertain at all, or is merely an excessive and unauthorized application of judicial force in a cause otherwise properly cognizable by the court or judge in question. *State ex rel. v. Walls* (1892) 113 Mo. 42 (20 S. W. Rep. 833); *In re Holmes* (1894) 1 Q. B. [1895] 174.

Prohibition, however, will not ordinarily be granted

St. Louis, etc., Railroad Co. v. Wear.

where the usual modes of review by appeal or writ of error furnish an adequate and efficient remedy for the correction of an injury resulting from the unauthorized exercise of judicial power.   But where those remedies are inadequate to the exigency of the situation, in a particular case, a supervising court may properly interfere by the remedy now asked.   If the orders in the Kerfoot suit were in excess of the jurisdiction of the learned judge who entered them, and if they have resulted in the seizure of a large part of a railroad line and its detention from those entitled to, and whose duty requires them to, operate it for the convenience of the public, the case is one which would permit (if not demand) the application of a writ of prohibition to correct the wrong complained of.

The remedy of prohibition affords opportunity for a direct attack upon proceedings questioned upon the point of jurisdiction.   If the facts shown by a record reveal an unwarranted application of judicial power, causing an immediate and wrongful invasion of rights of property, the writ of prohibition may go to check the execution of any unfinished part of the extrajurisdictional program that may have been outlined. Sometimes the writ may be so shaped as to undo the steps that have been taken in such a program.   To justify the use of the writ it is not essential that the proceedings in dispute should be so entirely void as to warrant a declaration of nullity upon a collateral inquiry.   The statute governing proceedings in prohibition makes no change in the ancient law on these points.   Laws, 1895, p. 95.

2.   The plaintiffs in this court contend that the learned judge had no jurisdiction to appoint a receiver for the railroad company upon the showing made, and that the order of appointment is therefore null.

It is true that there are precedents declaring that, in the absence of statutory authority for so doing, the property of a solvent and going corporation can not rightfully be taken from the control of its officers at the suit of a mere creditor at large, and be placed in the hands of a receiver on account of mismanagement merely, or to secure the performance of some engagement of the company, even in regard to its shares. Some decisions have gone so far as to correct, and even to prohibit, such proceedings, as entirely beyond the general jurisdiction of courts of equity. *Port Huron, etc., R'y Co. v. Judge* (1875) 31 Mich. 456; *Va., etc., Iron Co. v. Wilder* (1892) 88 Va. 942 (14 S. E. Rep. 806); *Mason v. Supreme Court* (1893) 77 Md. 483 (27 Atl. Rep. 171); *Matter of B. G. E. Co.* (1894) 143 N. Y. 261 (38 N. E. Rep. 297); *People v. Weigley* (1895) 155 Ill. 491 (40 N. E. Rep. 300); *State ex rel. v. Superior Court* (1895) 12 Wash. 677 (42 Pac. Rep. 123); *Fischer v. Superior Court* (1895) 110 Calif. 129 (2 A. & E. Corp. Cas. N. S. 339, 42 Pac. Rep. 561).

But in view of the other serious and sufficiently difficult questions involved in the case at bar, and the desirability of prompt announcement of the conclusion that has been reached, we shall not now stop to investigate the soundness of plaintiffs' contention above stated.

3. A power to appoint receivers is expressly conferred upon judges of trial courts in vacation by section 2193 (R. S. 1889), which greatly broadened the terms of the old law (G. S. 1865, p. 678, sec. 52) under which *State ex rel. v. Gambs* (1878) 68 Mo. 289, was decided.

We shall not be obliged to consider whether the judge might not appoint a receiver in vacation by virtue of inherent power in the circuit court to make such an order. For, in the instance under review, the

St. Louis, etc., Railroad Co. v. Wear.

order was made in another county than that in which the petition for a receiver had been filed.

, The inherent (as well as the express) powers of a court must be exercised within the territorial jurisdiction of that court, unless positive law enlarges the field of their use. But where a judicial power is given by statute to a judge in vacation he may exert that power (at least within his circuit) out of, as well as in, the county where the cause is pending, unless there is something in the statutory authority to forbid such action.

It may be conceded for the present (without examining the proposition closely) that the power given to the judge to appoint a receiver carries with it, as a necessary incident, a power in his court (if not in the judge personally) to enforce obedience to orders made within the ambit of that power and in accordance with established principles of law governing the exertion of such a power. (As to the mode of applying that power we shall have more to say in the next section of this opinion.)

But the judicial authority to deal with property by means of a receivership is not unlimited, or absolute. *Harris v. Beauchamp* [1894] 1 Q. B. 801.

By a very late statute of Missouri an appeal may be taken from any order "refusing to revoke, modify or change an interlocutory order appointing a receiver or receivers." The same statute further provides for a very summary determination of such appeals, and for that reason directs that they shall, on motion, be advanced on the appellate docket. Laws, 1895, p. 91, amending sec. 2246.

The purpose of this enactment is to moderate the hardships resulting from the long continuance of receiverships granted on insufficient grounds, when no review of interlocutory appointments was permissible.

The reports of court proceedings in the United States, prior to the passage of that act, afforded illustrations of the injuries possible from erroneous judicial action in the matter of receiverships—injuries for which the law seemed to afford no adequate redress.

The right to a summary review of an interlocutory order maintaining a receivership is clearly given by the statute cited. It is a valuable and substantial right. The administration of the law must conform to the intent of the legislature in regard to it. *Andrews v. Nat. Foundry* (1894) 18 U. S. App. 458 (10 C. C. A. 60).

It is noticeable that a prompt review is allowed by the act of 1895 only where the order continues, not where it dissolves, the receivership. Thus the statute is plainly aimed at the possible abuse of maintaining a receivership (without just grounds) beyond a period required for an investigation of its correctness.

If the purpose of the new law is kept in view and effectuated, the procedure in such cases must be shaped so as to permit a speedy review of interlocutory orders appointing receivers in vacation, as well as in term. Otherwise such orders, in many parts of Missouri, might stand for nearly half a year without the possibility of even a first review, under the existing law in regard to terms of court. Laws, 1892, p. 10, sections 30 and following.

In other states where statutes allow appeals from interlocutory injunction orders, appointments of receivers, etc., it has been held that the appeals may be taken in vacation as well as in term. *Griffin v. Bank* (1846) 9 Ala. 201; *Montana, etc., R'y Co. v. Helena, etc., R'y Co.* (1887) 6 Mont. 416; *Wabash Railroad v. Dykeman* (1892) 133 Ind. 56 (32 N. E. Rep. 823).

Such rulings appear necessary to conform to the plain design of the legislation on that subject. The

new provisions in this state most clearly import that persons whose possession is to be invaded by a receivership shall have, at least, a prompt and full opportunity for a hearing (both preliminary, and by appeal) as to the justice and equity of such a drastic remedy.

Keeping the purpose of the new statute in mind, how must we regard the orders of the learned circuit judge in the Kerfoot suit?

The appointment of the receiver was made without notice to, or any hearing of, the defendants. They had no opportunity to offer the facts which they assert, tending to prove that the demand for any sort of receivership was without foundation. The learned judge's order fixed a time three months distant at which they might show cause why the receivership "should not be continued and the property kept by the said receiver pending a hearing upon the merits." The details of the order plainly contemplate that, meanwhile, the railroad was to be operated and managed by the receiver; at least until the next term of court, then three months off.

The receiver was directed, for instance, to perform existing contracts "until the further order of the court." The whole framework of the order suggests that the receivership was established for at least a three months' term.

The facts which justify the appointment of a receiver (without notice to the party whose possession is disturbed) are exceptional, at best. Nothing but the plainest showing of an imperative necessity for such an order to prevent a failure of justice should move a court to grant a motion to that end; though there is no hard and fast rule that we can give, prescribing when the discretionary power to make such an order may or may not be used. But of this proposition we feel sure: that, under our existing law, no temporary receivership

can rightly be set up to last three months, without affording first a hearing to the party whose possession of property is determined by such an order. If the court had been in session, so as to permit immediate application to modify the order, the relief then possible might affect the applicability of a prohibitory writ. But the facts here are different. In vacation, at least, a party should not be obliged to hunt up the judge for a correction of an order made in excess of his power in the premises.

The right to appoint a temporary receiver in vacation is limited by the necessity from which alone the right to make such appointment springs. *Larsen v. Winder* (1896) 14 Wash. 109 (44 Pac. Rep. 123).

No court in Missouri may, without notice, declare a receivership (pending suit) for a longer time than is fairly and reasonably requisite to allow the defendant, whose possession is invaded, to show cause against a further continuance of the receivership. What is such reasonable time will depend on the circumstances of each case. But we have no doubt that three months is beyond (and very far beyond) any reasonable day for the showing of cause.

The statute allowing appeals from interlocutory receivership orders must be given due force. It contemplates that an early opportunity shall be allowed to combat (and, if desired, to review) the appointment. The courts must yield to that obvious purpose, and permit no receivership to stand without a summary opportunity to review the equity of it.

When a judge in vacation deems the exigency sufficiently great to warrant an ex parte order for a receivership of property, such as that in question here, he should by the same order appoint a very early day for the showing of cause against the order by defendants,

so that the latter may then have opportunity for the motion to vacate which the statute permits.

Our law confers, indeed, power to appoint a receiver in vacation; but it also allows an appeal from an order refusing to vacate an interlocutory appointment. A reasonable construction of this law would appear to permit in vacation a motion to revoke the appointment in vacation; otherwise one of the chief remedial objects of the appeal statute on this subject would be frustrated.

It has been held by some courts that a power to do a certain judicial act out of term implies a power to undo that act, if justice appears to require that move. *Cincinnati, etc., R. R. Co. v. Sloan* (1877) 31 Ohio St. 1; *Walters v. Trust Co.* (1892) 50 Fed. Rep. 316.

We hold that the learned judge's order in the case on the circuit was in excess of the limitations on the power of appointment without notice, which we think the law imposes by the clearest implication.

4. But another patent infirmity is noticeable in the proceedings in question. Had the first order fixed a reasonable date to show cause against it, the question of the jurisdictional validity of the second order (the order to the sheriff) would demand serious attention.

That order was made after the refusal of the superintendent of the new Kennett road to surrender possession to the receiver. The petition itself gave notice that the property over which the receivership was sought to be established was in possession of the new company by virtue of the alleged consolidation. The old Kennett company and its directors were parties defendant in the petition. The new company was not a party to it, for the list of directors shows that only the old company was pointed out as defendant. The receivership asked of, and granted by, the judge reached for the property of the old Kennett company and of the Pem-

iscot railroad company. The directions to the receiver exhibit that meaning of the order quite clearly. Then it was evidently beyond the power of the learned judge to order a seizure of property, in the possession of the new company, without at least giving the latter an opportunity to show cause against the proposed order. By that order the learned judge virtually decided that the transfer to the new company was invalid, and the union of the two old companies merely nominal. That ruling was made without any but an ex parte hearing, as against a stranger to the case in court. The order to the sheriff was in the nature of a writ of assistance as known to the chancery practice. Such a writ could not rightly be issued, even on a final decree (and, for stronger reason, not upon an ex parte interlocutory order) as against one not a party to the suit, without a chance to the latter to show cause against the order therefor. *People ex rel. v. Rogers* (1830) 2 Paige 103; *Howard v. Railroad* (1879) 101 U. S. 848; *State ex rel. v. Ball* (1892) 5 Wash. 387 (31 Pac. Rep. 975).

The summary writ (issued from another county) to seize the property and deliver it to the receiver was beyond the jurisdiction of the learned judge, so far as it concerned or affected the rights of the new Kennett company; and as to the latter company, the effect of the writ should be checked by the prohibition now invoked.

5. The fact that no objection was made on the circuit to the want of jurisdiction is no barrier to a prohibition, where the order complained of was entered in vacation, ex parte, and the defect of jurisdiction appears on the face of the papers. Nor can the want of an exception to the objectionable order have any weight where no opportunity to except at the time was had by reason of the ex parte nature of the order.

6.   Assuming that the learned judge was without jurisdiction to require the immediate delivery of the property of the new Kennett company to the receiver, without a hearing, then the disobedience of the order by Mr. Houck, as superintendent of that company, involved no contempt.  It is always permissible to show, upon process for contempt, that the order disobeyed was beyond the jurisdiction of the authority from which it emanated.  If that showing is successfully made, no punishable contempt has been committed.  *In re Sawyer* (1888) 124 U. S. 200; *Smith v. People* (1892) 2 Colo. App. 99 (29 Pac. Rep. 924); *Schwartz v. Barry* (1892) 90 Mich. 267 (51 N. W. Rep. 279); *State ex rel. v. Winder* (1896) 14 Wash. 114 (44 Pac. Rep. 125).

7.   It is insisted by the plaintiffs in this court that the action of the learned circuit judge was void because the appointee named as custodian of the property could not lawfully be appointed receiver of their railway line.

The constitution declares that:

"No railroad or other corporation, or the lessees, purchasers or managers of any railroad corporation, shall" * * * "in any way control, any railroad corporation owning or having under its control a parallel or competing line; nor shall any officer of such railroad corporation act as an officer of any other railroad corporation owning or having the control of a parallel or competing line.  The question whether railroads are parallel or competing lines shall, when demanded, be decided by a jury, as in other civil issues."  Const. 1875, art. 12, sec. 17.

Two sections of the statute law, in furtherance of the purpose of the organic law quoted, are as follows:

"It shall be unlawful for any railroad company, corporation or individual owning, operating or manag-

ing any railroad in the state of Missouri, to enter into any contract, combination or association," * * * "or in any way whatever to any degree exercise control over, any railroad company, corporation or individual owning or having under his or their control or management a parallel or competing line in this state, but each and every such railroad, whether owned, operated or managed by a company, corporation or individual, shall be run, operated and managed separately by its own officers and agents, and be dependent for its support on its own earnings from its local and through business in connection with other roads, and the facilities and accommodations it shall afford the public for travel and transportation under fair and open competition." R. S. 1889, sec. 2569.

"It shall be unlawful for any officer of any railroad company or corporation, or any individual owning, operating or managing any railroad in this state as a common carrier, to act as an officer of any other railroad company or corporation owning, operating or managing, or having the control of a parallel or competing line, and the question whether railroads are parallel or competing lines shall be decided by a jury, when so demanded." R. S. 1889, sec. 2570.

At various points in the statutes concerning railroads, receivers are mentioned among other managing operators of such lines. R. S. 1889, secs. 2631, 2644, 2645. So that it is obvious that the president of a parallel or competing railroad, however high his business qualifications, is not eligible to appointment as receiver of the competing railway line in Missouri.

The fact is alleged in this court that Mr. Fordyce is the president of the "Cotton Belt" route, and that it is a railway in competition with the new Kennett road. The fact stands admitted by the pleadings here

in their present form.    But to make it available, as
the groundwork of a prohibition, the fact should
appear in some way in the proceedings on the cir-
cuit.    It does not appear in the record of those
proceedings.    Nor does it appear that the learned
circuit judge was aware of the fact when the appoint-
ment was made.    Hence we are not called upon to say
whether or not the fact would furnish of itself a cause
to prohibit the execution of the order of appointment.

8.    The summary order for the seizure of the
property in possession of the new Kennett road was,
we think, in excess of the rightful power of the learned
circuit judge in vacation.    We hence consider that the
rule in prohibition should be made absolute, and direct
that judgment for a peremptory writ be entered, pro-
hibiting the circuit judge from enforcing any order
heretofore made in the Kerfoot case under which said
receiver has taken possession (or is attempting to take
possession) of some part of the railway or other prop-
erty of the St. Louis, Kennett and Southern railroad
company, or of the Pemiscot railroad company; and
prohibiting him from making any order (upon the
pending petition of said Kerfoot in said cause) direct-
ing or permitting any receiver to take possession of
any property of said companies without first allowing
the present St. Louis, Kennett and Southern railroad
Company an opportunity to be duly heard; and by the
writ the said receiver will be prohibited from attempt-
ing to take or hold possession of any property of said
railroad companies by virtue of said order; and the re-
ceiver will further be ordered to restore forthwith any
and all property of the new Kennett road that may be
in his possession by reason of his said receivership.

BRACE, C. J., and GANTT, MACFARLANE, BURGESS,
and ROBINSON, JJ., concur.    SHERWOOD, J., dissents.

### ON RECEIVER'S MOTION AFTER JUDGMENT.

PER CURIAM—(BRACE, C. J., and BARCLAY, GANTT, MACFARLANE, BURGESS, and ROBINSON, JJ.).—In the receiver's return to the peremptory writ it is stated that he has delivered to the plaintiff company all the property in his hands as receiver, except about $1,455 which he holds subject to the order of the court, and he asks whether he may be allowed therefrom his costs, and a reasonable attorney's fee, for the reason that he has no personal interest in the controversy, was only an appointee of the circuit court, and was not, as he is advised, a necessary party to this action.

1. A receiver's right to compensation and allowances for expenses does not depend upon the correctness of the order of appointment, where the appointment has been made by a court having general jurisdiction to take such action. But if the appointment is merely in excess of the power of the court because the facts and circumstances do not authorize the appointment as made, and the enforcement of the order is therefore subjected to the check of a writ of prohibition, the receiver is not entitled to retain possession of any part of the property coming to his hands by virtue of the order. The order of appointment having been adjudged to be unauthorized, he can not claim compensation for his services out of the fund or property received by him under the order. His claim for allowances, etc., must be otherwise made, in an accounting with the court in the suit wherein he was appointed.

The prohibition in this case does not interfere with the general course of Mr. Kerfoot's suit in Dunklin county. It forbids action upon the original orders for the receivership, and annuls what was done under those orders. But it leaves the action pending as before.

The receiver's application for allowance, etc., can not properly be granted in this court in this case as it now stands, but must be left to the circuit court for consideration as above indicated.

Meanwhile the receiver, in pursuance of the final judgment in prohibition, should forthwith deliver to the plaintiff company any and all funds and property remaining in his hands as receiver, and make return of full compliance with the judgment within five days after service of this order.

2.   Whether the receiver was a necessary party to the present action we need not inquire, at this stage of it.   Proceedings in prohibition are governed by the code of civil practice except as otherwise provided in the act regulating that writ.  Laws, 1895, p. 95, sec. 3. Hence any such objection as is now suggested should have been interposed much earlier to be available.   It must now be considered waived.  R. S. 1889, secs. 2043, 2047; *Soeding v. Bartlett* (1864) 35 Mo. 90.

.All the members of the court concur, except Judge SHERWOOD, dissenting.